Argued April 23, affirmed May 19, 1975

HAMMOND, *Respondent, v.* ALBINA ENGINE & MACHINE WORKS, INC. (No. 408-874), *Appellant.*

534 P2d 1163

*Frank A. Moscato, Jr.,* Beaverton, argued the cause for appellant. On the brief were Philip A. Mongrain and Roger R. Warren, Beaverton.

*Allen T. Murphy, Jr.,* Portland, argued the cause for respondent. With him on the brief were Richardson & Murphy, Portland.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

In this workmen's compensation proceeding the employer appeals from an order of the circuit court affirming an order of the Workmen's Compensation Board (one commissioner dissenting) which in turn affirmed an order on remand entered by a hearing referee. The referee upheld a determination order of the Closing and Evaluation Division awarding claimant permanent total disability. The sole issue is whether claimant's disability is the result of occupational disease. We have reviewed the record de novo and we adopt the following from the opinion and order of the referee:

"\* \* \* \* \*

"The employer contends the claimant sustained a compensable aggravation of an underlying chronic asthmatic-bronchitis condition but the aggravation was a temporary exacerbation only and left no additional physical residuals and that therefore there is no permanent loss of earning capacity as a result of the exacerbation brought on by the work.

"Claimant resists, contending that he was an employee for 17 years and that he was subject to myriad extensive fumes from grinding rubber valves which the last two years of his employment composed about 50% of his work effort; that substantial welding smoke was inhaled by him due to the building being inadequately ventilated; and that in grinding plastic valves substantial amounts of white powder was formed and that these particulates found their way into his lungs. Claimant contends that the continuous exposure aggravated an underlying condition and caused it to accelerate, relying on his treating physician's reports and testimony.

"At the hearing, claimant testified that he worked on 24 inch valves that were six inches thick and that he had to machine off the rubber valves used in gas and oil. He used an air grinder and ground

off the necessary rubber in four hours. This produced smoke and powder which went all over the work area. He had a suction line along the floor which was insufficient. He also worked on what was described as a metal valve lined with [monel] which involved using a dye that likewise had to be cleaned off with some material that resulted in more fumes being produced. There was general welding throughout the shop. The rubber valve grinding fumes began prior to 1961 and his exposure continued until May of 1969 when he quit work. Claimant's testimony was that he was always exposed to either rubber or plastic valve dust, dye and solvents and welding fumes.

"Dr. George M. Robins testified in behalf of the claimant that the claimant was known at the clinic since 1952 and that he had been treating claimant since 1962. He was of the opinion that the claimant's disease progressed more rapidly because of the industrial exposure * * *[,] that he believed that claimant was not employable in 1969 and after a year's lay off was still not employable * * * [and that the] industrial exposure materially contributed to claimant's condition.

"When asked if the claimant would be employable if he had not worked at Albina from 1965 to 1969, the doctor said that he truly did not know. He stated that the condition that he saw in the claimant was what he usually saw in a man much older. * * * The doctor felt that the exposure at work aggravated the condition to a material degree and stated that medical science did not know why some people get better and some do not after removing them from the work hazards.

"The carrier relies upon the reports and testimony of Dr. John E. Tuhy of the Thoracic Clinic and Dr. Horton Corwin Hinshaw, the chief of staff of Harkness Community Hospital and Medical Center, formerly Southern Pacific Hospital in San Francisco. * * * Tuhy believed claimant had bronchial asthma with chronic obstructive pulmon-

ary emphysema with chronic bronchitis. Dr. Tuhy stated that he agreed with the treating physician that the work exposures did not cause the asthma. He stated it was generally felt that inhalation of various respiratory irritants probably did aggravate the symptoms of chronic asthmatic bronchitis and chronic obstructive lung disease but that it would be conjectural to say that given a patient with the claimant's background that he would not have been in the same situation after 17 years as a white collar worker instead [of] as a machinist. He felt it would be fair to say that inhalation of respiratory irritants at the workman's place of location probably played a minor role in aggravating his underlying chronic lung disease. He felt it would be speculative to go beyond this and trying to assign some kind of percentage factor to the role of occupational exposures. He did state that the claimant's condition is severe, gradually progressive and permanent * * *.

"* * * * *

"* * * Dr. Tuhy reported that in his opinion the persistence and progression of the claimant's respiratory symptoms long after he has quit work was typical of the history of bronchial asthma associated with chronic obstructive pulmonary emphysema and chronic bronchitis. He did not see how a possible aggravation of the disease by work exposure could now be present. * * *

"* * * * *

"Dr. Hinshaw * * * thought that the diagnosis of chronic bronchitis, asthmatic bronchitis and chronic obstructive pulmonary disease with emphysema was secure * * *. He stated that the causes of these problems were obscure in this particular case as in many others. He felt that claimant had symptoms since 1943 and that the sequence of subsequent events has been compatible with the usual history of this disorder. He stated that any form of respiratory irritation would aggravate the

symptoms of this disease but it was his opinion that such aggravations were temporary and would not be involved in the claimant's present state of permanent disability. * * *

"* * * Both Dr. Hinshaw and Dr. Tuhy agree with Dr. Robins that the claimant is permanently and totally disabled. Dr. Hinshaw thought that any form of respiratory irritation would aggravate the symptoms of the disease but was of the opinion that such aggravations were temporary and would not be involved in the present state of permanent disability. * * *.

"* * * [The exposure and industrial hazards claimant experienced in his position with the employer appear] to be the straw that broke the camel's back considering the advanced condition of the claimant's bronchitis and emphysema. * * *

"* * * * * *"

We note that Dr. Robins, the specialist who treated claimant, was consistent in his testimony which favored the proposition that the work-related aggravation of claimant's underlying condition was permanent. He also testified that claimant's work speeded up the worsening of his condition. Dr. Tuhy, who saw him twice, on the other hand was somewhat inconsistent in his testimony: He testified generally that the aggravation from the work environment was temporary, but portions of his testimony favor the proposition that the work conditions led to some permanent damage.

We also note that claimant suffered attacks of pneumonia while working and Dr. Hinshaw, relied upon strongly by the employer, mentions this as a factor which can create a greater susceptibility to future problems. This would be compatible with Dr. Robin's theory of a progressive disease accelerated by work conditions. Dr. Hinshaw based his testimony only upon medical reports from others. He never examined claimant.

The employer's theory that the employment-connected aggravation, in effect, disappeared after claimant left his job is not as consistent with our analysis of the evidence as is claimant's contention that the aggravation made him a sicker man faster and that he was worse off when he left his job than he would have been had he been employed in a less-polluted environment.

> "* * * Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact * * *." 1 Larson, Workmen's Compensation Law 3-257, § 12.20 (1972).

Although the issue is admittedly a close one, the evidence in this record preponderates in favor of claimant's position that claimant's work environment aggravated his underlying condition and accelerated its deterioration. *See Buchanan v. Allen-Hay Motor Co.,* 21 Or App 90, 533 P2d 824 (1975).

Affirmed.