Argued June 28, affirmed August 17, 1977

HAMLIN, *Respondent,*
*v.*
ROSEBURG LUMBER COMPANY, *Appellant.*
(No. 76-1646, CA 7749)
567 P2d 612

Philip A. Mongrain, Beaverton, argued the cause and filed the brief for appellant.

William A. Barton, Newport, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, Thornton, Judge, and Fort, Senior Judge.

FORT, S. J.

**FORT, S. J.**

The problem presented by this worker's compensation appeal is whether or not the claimant sustained any permanent disability as a result of her job-connected aggravation of a preexisting bronchial asthmatic condition. It is conceded that after several weeks of close exposure to welding fumes while working, she sustained an acute severe bronchial asthmatic attack in February 1972 requiring hospitalization for a month and later required further hospital confinement on at least two occasions for severe recurrent attacks. Her claim was accepted by the employer and the Workers' Compensation Board, and she remained on temporary total disability for much of a two-year period.

The employer then sought closure of the claim and denied any permanent disability. The referee and the Board itself upheld the employer and found no permanent disability. On appeal to the circuit court, the Board was reversed and the case remanded for determination of the extent of permanent disability. The employer appeals to this court.

We have examined the record de novo and note that prior to the 1972 exposure to the welding fumes with the resulting injury and hospitalization, the claimant had worked regularly for nearly 20 years, first as a shipping clerk, then as a dietician and for several months prior to the injury as a skoog operator. When, after being on temporary total disability for over a year, she was allowed to return to work, she went back to work for the same employer but this time on the green chain as a fishtail offbearer, a position entailing hard physical labor, where she stayed for about a month. On April 6, 1973, the pain in her chest became sufficiently severe that she became sick. She went to her foreman who told her she had better go home "because we don't want nothing to happen to you." Following her last hospitalization in 1974, it became necessary, in addition to the regularly previously

prescribed drugs, for her physician to require her to acquire an IPP portable respiratory machine weighing 28 pounds which she is frequently required to use as much as four times daily in order to control her condition. After April 6, 1973, she remained on temporary total disability until the employer issued its notice terminating her with no permanent partial disability.

Claimant's treating physician throughout the entire period here involved has been of the opinion that her present condition was drastically aggravated by the inhalation of welding fumes to which she was daily exposed while working for some three months prior to her first severe asthmatic attack that resulted in hospitalization and it was a direct causative factor in her present condition.

Appellant relies primarily on the medical opinion of a chest specialist who at no time was claimant's treating physician and who first examined her more than two years after she was first hospitalized in February 1972. In his June 1974 opinion he acknowledges that "she had an exposure to an irritant and because of the reactive airway status, an asthmatic attack was precipitated by the welding fumes in question." He noted too that although she had undergone treatment from an allergist in the 50's for a condition which affected her breathing, thereafter:

> "* * * [s]he was free of symptoms until after working at Roseburg Lumber in the latter part of 1971, during a time when there were welding fumes and painting fumes present. The patient noticed increasing drowsiness, nausea, vomiting, coughing, and apparent wheezing, which necessitated emergency physician's service as well as hospitalization * * *."

He concluded: "I * * * doubt permanent damage from such exposure."

■■ Essentially, then, this is a fact question, as the parties agree, and as such is governed by the principles

[ 618 ]

announced in *Hammond v. Albina Engine & Mach.,* 21 Or App 452, 534 P2d 1163 (1975).

Although the referee correctly acknowledged:

"A treating physician's opinion is frequently of considerably more weight than a non-treating one. Sometimes this is true even when the non-treating doctor is a specialist. * * *",

he nevertheless found the chest specialist's opinion more persuasive, as did the Board. The circuit judge disagreed and pointed out in his opinion why he found the treating physician's views more persuasive. We agree with that conclusion. No question of credibility concerning the evidence elicited from either doctor is raised. Indeed, only the claimant's doctor appeared personally before the referee.

Affirmed.