In the Matter of the Compensation of
ABBOTT,
*Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Petitioner.*
(No. 78-5375, CA 15902)
609 P2d 396

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for petitioner. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Allen Reel, Portland, argued the cause for respondent. With him on the brief were Elden M. Rosenthal and Kennedy, King & McClurg, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The issue in this workers' compensation case is whether the claimant has suffered a compensable occupational disease. The claimant has multiple sclerosis. The resolution of the issue presented turns upon an examination of the conflicting medical evidence. After examining this evidence, both the referee and the Workers' Compensation Board found the claim to be compensable. We affirm.

The facts, other than those relating to medical causation, are not in dispute and they may be summarized as follows: The claimant worked as a legal secretary. At the time when her multiple sclerosis became disabling, claimant had worked about five years for an attorney who specializes in workers' compensation practice and who was described by another secretary in the office as a "workaholic". The attorney carried a heavy caseload of 400 to 500 open files, which resulted in a large amount of dictation and other work for claimant.

Claimant had always managed to keep up with her work. However, in the fall of 1977 she began to feel extremely fatigued. She experienced numbness and a lack of coordination and fell behind in her work.

Early in January, 1978, claimant suffered a severe headache. Following this headache, her hands and feet were numb. Claimant continued to work until late in February, 1978, She then left work on the advice of her doctor, who had made a tentative diagnosis of multiple sclerosis.

For a month, claimant stayed home, sleeping some 15 to 16 hours per day. Her condition improved and she returned to work. However, after only three days of work, claimant's symptoms returned. She could not continue with her job.

Claimant has not worked since April 1, 1978. Her treating physician has advised her that she must not work for one to two years. After this rest, claimant

may be able to return to parttime or perhaps even full time work.

ORS 656.802(1)(a) defines an "occupational disease" as,

"Any disease or infection which arises out of and in the scope of the employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

Claimant's work was unusually stressful and demanding. *See Beaudry v. Winchester Plywood Co.,* 255 Or 503, 515, 469 P2d 25 (1970). The issue is whether this stress exacerbated the claimant's multiple sclerosis. As we have noted, the medical evidence is in conflict.

SAIF relies on the opinions of three physicians. In contrast, claimant bases her case upon the opinion of only one physician, Dr. Swank. On our *de novo* review, we agree with the referee and the Board that Swank's opinion is more persuasive. He is both the treating physician and a leading expert in the diagnosis and treatment of multiple sclerosis.

All three of the physicians upon whose opinions SAIF relies are neurologists and all of them have some experience with multiple sclerosis patients. However, none of the three doctors specializes in the treatment of multiple sclerosis. Only one of the three doctors ever saw the claimant. That physician, Dr. Carter, later referred the claimant to Dr. Swank, claimant's expert.

All of SAIF's experts concluded that claimant's multiple sclerosis was neither caused nor aggravated by her work related stress. One of the physicians suggested that the disease is "almost a random process." Another testified that multiple sclerosis is a complex immunological disorder which is produced when an infective agent, such as a virus, combines with portions of the myelin sheath, which insulates the nerve fibers. The body's own immunological protective mechanisms then attack the myelin in a "self-destructive disorder." This doctor felt that stress did

[660]

not affect the behavior of the disease, which has a "natural history of * * * waxings and wanings." However, this physician also acknowledged that there is a positive statistical correlation between stress and acute exacerbations of multiple sclerosis.

Dr. Swank is claimant's treating physican. Since 1948, he has specialized in the etiology and care of multiple sclerosis. He has served as the chairman of the Neurology Department at the University of Oregon Medical School. He has written some 20 to 30 publications dealing with multiple sclerosis. He has followed a group of 150 multiple sclerosis patients for the last 30 years. He has as many as 1,000 multiple sclerosis patients, which is twice as many such patients as are seen by all other physicians in the Portland area.

Dr. Swank noted that multiple sclerosis patients "* * * are apt to suffer relapses of the disease when they are under high tension or when they overwork." He concluded that the claimant's heavy workload exacerbated her disease. He testified that, after this aggravation of claimant's multiple sclerosis, she would not be able to tolerate as much stress or tension. "[T]he ability to withstand hard work and carry on an active life are reduced."[1]

We find that Dr. Swank's opinion is more persuasive. He has more experience with claimant's particular condition, since he is the treating physician, and more expertise in the cause and treatment of multiple sclerosis. *See Hamlin v. Roseburg Lumber,* 30 Or App 615, 567 P2d 612 (1977). This expertise tips the balance in favor of the compensability of this claim.

This is a difficult and close case in which we are required to resolve an issue of medical causation

---

[1] Dr. Swank's testimony indicates that claimant's underlying disease has been exacerbated. This is not a case where the work has resulted "* * * in a worsening of * * * symptoms not produced by a concomitant worsening of the underlying disease process." *Weller v. Union Carbide,*288 Or 27, 29, 602 P2d 259 (1979).

which has no agreed scientific resolution. Here, as in heart attack cases, the medical experts disagree as to the relationship between stress and an exacerbation of the disease. *See Clayton v. Compensation Department,* 253 or 397, 454 P2d 628 (1969). Here, as in *Clayton,* we "* * * reject the view that exertion or stress can never be a causative factor * * *." 253 Or at 402.

Affirmed.