Argued and submitted February 23, 1982, reversed,
referee's order reinstated October 5, 1983

In the Matter of the Compensation
of George F. Weiland, Claimant.

**WEILAND,**
*Petitioner,*

*v.*

**SAIF CORPORATION,**
*Respondent.*

(WCB No. 79-06914, 79-03871; CA A25284)

669 P2d 1163

Peter W. McSwain, Eugene, argued the cause for petitioner. On the brief was David C. Force, Eugene.

Donna M. Parton, Associate Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With her on the brief was Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Claimant appeals an order of the Workers' Compensation Board that reversed the referee and held that claimant's occupational disease was not caused by his employment at Lane County. He further appeals the Board's affirmance of the referee's holding that he had not timely filed his claim against Linn County. We hold that the Board erred in the first holding and reverse.[1]

Claimant seeks compensation for transient visual loss and migraine headaches, which he claims are an occupational disease caused by anxiety and stress in his employment. He became employed as a law enforcement officer in 1961. Within a year of that date, he suffered his first migraine headache. After he had undergone a series of tests, his condition was diagnosed as being related to tension. The headaches subsided, and he continued his employment. In 1969, while employed as a deputy sheriff in Linn County, he was accused of the misdemeanor of false swearing resulting from testimony he had given about the performance of his duties in a criminal case. He resigned under pressure. Thereafter, he was acquitted of the charges in a jury trial. After leaving Linn County, claimant left law enforcement for approximately two years, during which time he went to school and worked in a mill. During this period, he had no problem with headaches. In 1972, he became employed as a deputy sheriff with Lane County. In approximately 1974 or 1975, he began to have transient visual loss, beginning with small black dots on the right visual field of both eyes lasting 20 to 25 minutes. These periods of transient visual loss were followed by periods of "throbbing, pounding left posterior headache" which left when he was able to sleep them off. He would be lethargic for a day or so after these headaches. His condition gradually worsened until the transient visual loss involved total blindness and occurred on a more frequent basis. Eventually, his employer became aware of the blindness, and claimant was retired as being unfit for duty.

The issue is whether claimant's condition is causally related to his employment at Linn County, his employment at

---

[1] Because of our disposition of this case, we do not need to reach the issue of the timeliness of the claim against Linn County.

Lane County or to stress factors which occurred off the job.[2] The only evidence of stress at Linn County is the accusation of false swearing that resulted in his resignation. He testified that his employment at Lane County was very difficult, because his captain "* * * would work my men against, try to work my men against me * * *." He also testified that during his off hours he was subjected to frequent calls from police officers requiring his supervision. Finally, he testified that, whenever he was called to testify in a criminal case as a result of his police work, "I was scared, constantly scared. I would get into testimony and my voice would break off and start squeaking. It was a terrible feeling to sit there in a courtroom * * *." He testified that, prior to being a police officer for Lane County, he did not have headaches on a regular basis and had never suffered from loss of vision or serious depression.

The medical evidence on causation is inconsistent. Dr. Myers stated in 1977 that the only precipitating factor noted by claimant for the headaches was his employment. In February, 1978, Dr. Yatsu stated that he agreed with Dr. Myers completely

"* * * that this patient's visual loss is the aura antecedent to a classic migraine headache and the symptom complex is job-related in that it is induced by stress while working in the sheriff's department.

"* * * * *

"The job realities for [claimant] are very difficult, but the presence of clearly stress and job related migraine headaches with associated visual loss plus the likelihood that effective therapy which would not impair his function are not likely, another line of employment would appear to be indicated."

Sometime in 1978, claimant began to undergo regular psychiatric treatment by Dr. Carter, who he saw approximately 80 to 90 times over a period of two years. The doctor's final medical conclusion after this treatment was:

"It is my opinion, with reasonable medical probability, that [claimant's] illness reflects post traumatic stress disorder, chronic, moderate to severe, having been initiated by the stress experienced by [claimant] relative to his court hearing

---

[2] There was no evidence that claimant was subjected to off-the-job stress similar to the kind he encountered at work.

and surrounding events in Linn County in 1968 with worsening of the underlying condition by exposure to events that symbolized or resembled these traumatic events in the pursuit of his routine duties as a Lane County Sheriff's Officer. * * *"

Dr. Holland, who saw claimant twice, and Dr. Colbach, who saw him once, both at SAIF's request, concluded that there was no causal relationship between the employment and the loss of vision and depression.

When the medical evidence is divided, we have tended to give greater weight to the conclusions of a claimant's treating physician, absent persuasive reasons not to do so. *Abbott v. SAIF,* 45 Or App 657, 609 P2d 396 (1980); *Hamlin v. Roseburg Lumber,* 30 Or App 615, 567 P2d 612 (1977). In this case, claimant's treating physician had the opportunity to see him 80 to 90 times over a period of two years. He had a much better opportunity to evaluate claimant's condition than either of SAIF's doctors, who examined him on a very limited basis. We accept the opinion of the treating physician, Dr. Carter, and hold that the employment at Lane County worsened his underlying condition and constituted the last injurious exposure for his occupational disease. The fact that a claimant may have been "highly susceptible" to having an occupational disease as a result of stress does not render it noncompensable. *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982). Further, it is not relevant whether a claimant's work complaints were well founded or whether they would have had an effect on a normal person. The only issue is whether they were a major contributing cause of the claimant's occupational disease. *McGarrah v. SAIF,* 59 Or App 448, 651 P2d 153 (1982), *rev allowed* 294 Or 491, 660 P2d 681 (1983). Under the last injurious exposure rule, Lane County is responsible for claimant's condition.

Reversed; referee's order reinstated.