Virginia D. COLWELL,
Plaintiff–Appellee,

v.

MENTZER INVESTMENTS, INC.
f/k/a Alpine Motorsports, Inc.,
Defendant–Appellant.

No. 96CA1014.

Colorado Court of Appeals,
Div. IV.

April 16, 1998.

Rehearing Denied May 28, 1998.

Certiorari Denied March 29, 1999.

Don, Hiller & Galleher, P.C., Shelley B. Don, David L. Hiller, Barry A. Schwartz, Denver, for Plaintiff–Appellee.

Retherford, Mullen, Johnson & Bruce, Anthony A. Johnson, Amelia L. Klemme, Colorado Springs, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

In this personal injury action, defendant, Mentzer Investments, Inc., appeals from a judgment entered on a jury verdict finding it negligent and awarding damages to plaintiff, Virginia E. Colwell. Defendant asserts, inter alia, that the trial court erred in admitting expert testimony regarding the effect that stress can have in causing multiple sclerosis (MS) to become symptomatic and that § 13–21–101, C.R.S.1997, is unconstitutional. We affirm.

Plaintiff brought her car to defendant's predecessor, an automobile repair business, for an inspection and necessary repairs prior to a cross-country trip. Following the in-spection, plaintiff noticed that smoke was coming from underneath the hood when the air conditioner was turned on. Although plaintiff brought the car back to defendant's predecessor on July 5, 1989, to have it reinspected, its employee informed her that the air conditioner compressor was working fine.

The next day, while plaintiff's husband was driving the car, the engine caught fire. Plaintiff's husband stopped in front of their house and ran and called for plaintiff to call 911. Thereafter, she and her husband were involved in efforts to extinguish the fire.

The following day, plaintiff began experiencing symptoms of nausea, lightheadedness, and double vision. A few months later she was diagnosed as having MS.

Both plaintiff and her husband were the original plaintiffs in the suit brought against defendant and others alleging breach of implied warranty of merchantability, negligence, strict liability, negligent infliction of emotional distress, and loss of consortium. Subsequent procedural developments resulted in plaintiff's husband ceasing to be a party and in Mentzer Investments, Inc., being the sole remaining defendant. The case was tried on plaintiff's claim of negligent infliction of emotional distress only.

Prior to trial, defendant filed a motion *in limine* seeking to exclude the testimony of plaintiff's expert witness. The court denied this motion as well as defendant's motion for a directed verdict filed at the close of plaintiff's case-in-chief. At trial, defendant presented its own experts in opposition. The jury awarded plaintiff $862,405 in economic damages and $396,000 in noneconomic damages. The court then added prejudgment interest in the amount of $946,214.21.

Defendant's post-trial motions, including its request to reduce the jury's award of noneconomic damages to $250,000, were denied.

I.

Contending that the testimony of plaintiff's expert was not based on scientific knowledge, defendant first asserts that the trial court erred in permitting that expert to testify regarding the effect that stress has on caus-

ing MS to become symptomatic. We conclude the court did not abuse its discretion in admitting the testimony.

■ Absent a showing of abuse of discretion, a trial court's decision to allow a witness to testify as an expert will not be disturbed. *People v. Hampton*, 746 P.2d 947 (Colo.1987).

■ Generally, the test of *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) is applied to novel scientific devices or processes involving the manipulation of physical evidence. *Fishback v. People*, 851 P.2d 884 (Colo.1993).

However, if the proffered evidence does not depend on any scientific device or process or does not involve the manipulation of physical evidence and if an understanding of the expert's techniques is readily accessible to the jury and is not dependent on highly technical or obscure scientific theories, then the admission of the evidence is governed by CRE 702. *People v. Perryman*, 859 P.2d 263 (Colo.App.1993).

Under CRE 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Thus, CRE 702, and not *Frye*, has been the appropriate standard in cases involving expert testimony on rape trauma syndrome, *People v. Hampton, supra;* eyewitness identification, *Campbell v. People*, 814 P.2d 1 (Colo.1991); shoe print identification and comparison, *People v. Fears*, 962 P.2d 272 (Colo.App.1997); and dog tracking evidence, *People v. Brooks*, 950 P.2d 649 (Colo.App. 1997) (cert. granted February 2, 1998).

In *Campbell v. People, supra*, the supreme court adopted the reasoning of *United States v. Downing*, 753 F.2d 1224 (3d Cir.1985) to determine the admissibility of expert testimony that does not deal with scientific devices or processes and applied CRE 702.

Under the *Campbell* test, the trial court must determine whether the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or a fact in issue. If it so determines, then a qualified expert may testify thereto in the form of an opinion or otherwise.

■ To determine the admissibility of expert testimony, the trial court must hold an *in limine* proceeding to balance (1) the reliability of the scientific principles upon which the testimony rests, *i.e.*, the potential to aid the jury in reaching an accurate resolution of a disputed issue, and (2) the likelihood that the introduction of the evidence may overwhelm or mislead the jury.

■ Furthermore, the testimony must be relevant to the task at hand. And, the trial court retains its discretion under CRE 403 to exclude relevant evidence that would waste time or confuse the issues. Finally, in making its determination, the court should issue specific findings. *Campbell v. People, supra*.

### A.

■ The reliability inquiry does not require a process of scientific "nose-counting." Rather, a court should consider factors such as the degree of acceptance in the scientific community, the novelty of the scientific principle, and the existence of specialized literature on the subject. *United States v. Downing, supra.*

■ Here, the trial court addressed the admissibility of the testimony of plaintiff's expert pursuant to CRE 702 and *Campbell v. People, supra*. We agree that such was the proper standard.

The expert's qualifications and expertise in the area of MS were not disputed, and the trial court determined that his testimony would be helpful to the trier of fact. His testimony did not involve the application of any novel or newly developed scientific device or process, nor did it involve the manipulation of physical evidence. Rather, it concerned his observations of thousands of cases of MS and review of studies by others.

Plaintiff's expert, a board certified neurologist, testified that he has been in practice for over 40 years. At the time of the trial he taught at Harvard Medical School and ran the multiple sclerosis project at the Beth

Israel hospital in Boston, Massachusetts. He testified that over the course of his career he had seen between 5,000 and 6,000 MS patients. In his opinion, certain kinds of stress in some patients with MS can trigger the appearance of symptoms in an asymptomatic patient or a reoccurrence or new symptoms in a symptomatic patient. He also opined that there was a very clear triggering effect by the stress plaintiff suffered which caused the appearance of typical MS symptoms starting the day after the fire and continuing thereafter.

■ The evidence presented at trial concerned the effect that stress could have in causing MS to become symptomatic. Such testimony would assist the trier of fact in understanding the evidence of what researchers in the field have discovered. Thus, the evidence satisfies the threshold inquiry.

Although the trial court held an *in limine* hearing, it reserved ruling until plaintiff's expert testified at trial. It then subjected the expert's testimony to an analysis similar to the reliability inquiry set forth in *United States v. Downing, supra.* The court found there was a high degree of acceptance in the scientific community for the expert's testimony, the principles being discussed were not novel, and there was extensive literature on the subject. The court also considered that general acceptance does not require absolute validity or scientific unanimity. Rather, as noted in *Lindsey v. People,* 892 P.2d 281 (Colo.1995), all that is required is that the theory be accepted in a reasonably inclusive manner. Based on this evidence, the trial court denied defendant's motion to exclude the testimony.

■ Here, evidence adduced at trial demonstrated that a number of articles, studies, and treatises authored both by plaintiff's expert as well as others in the field have documented the relationship between unusual stress and the onset of MS symptoms. Although he did not rely on such studies in reaching his conclusion, plaintiff's expert testified that literature on the connection between stress and MS dates back over 100 years. The factor of specialized literature on the subject "bears on the likelihood that the scientific basis ... has been exposed to criti-

cal scientific scrutiny." *United States v. Downing, supra,* 753 F.2d at 1238–39. This evidence supports the trial court's conclusions described above.

One final factor not considered by the trial court, although discussed in *United States v. Downing, supra,* is how other courts have treated the particular scientific principle. Other courts have recognized a relation between stress and the manifestation of MS and considered evidence on the issue. *See Simpson v. Chater,* 908 F.Supp. 817 (D.Or.1995)(medical testimony in hearing for social security disability benefits that MS was progressive disease, and that the stress of working would exacerbate the progression of the disease); *Weber v. Public Employees' Retirement Board,* 270 Mont. 239, 890 P.2d 1296 (1995)(stating that MS is known to be aggravated by physical and emotional stress and considering deposition medical testimony that the disease had not become disabling until plaintiff underwent period of job stress); *Abbott v. State Accident Insurance Fund,* 45 Or.App. 657, 609 P.2d 396 (1980)(medical testimony in workers' compensation hearing that MS patients are apt to suffer relapses of the disease when they are under high tension and concluding that claimant's heavy workload exacerbated her disease).

We thus conclude that plaintiff's expert's testimony satisfies the reliability inquiry and had the potential of aiding the jury in resolving the disputed issues.

### B.

■ Once the court has assessed the reliability of the expert's testimony, the court must then weigh any danger that the evidence might mislead or confuse the jury. *See Campbell v. People, supra.* Expert testimony may mislead or confuse the jury where scientific principles have not been effectively communicated to the jury or where the jury is not presented any data on which the expert relies. *United States v. Downing, supra.*

In *People v. Fears, supra,* a division of this court addressed the admissibility of testimony of an expert witness on shoe print impres-

sion examination and identification. The division, looking to the expert's experience in the field, held that because the processes and techniques upon which the expert relied were readily understandable to the jury and did not involve the scientific manipulation of evidence, there was little possibility that the testimony would mislead the jury. We conclude that the same reasoning applies here.

Plaintiff's expert in the present case testified about the progression of MS and how certain kinds of stress may cause MS to become symptomatic. As in *People v. Fears, supra,* the expert's testimony focused on his observations made over the course of his lifetime work in the field of MS.

Accordingly, we conclude that the trial court acted within its discretion in admitting the expert witness' testimony.

## II.

Defendant next contends that because there was no evidence from which a jury could conclude that defendant placed plaintiff in the zone of danger, the trial court erred in not granting its motion for a directed verdict on plaintiff's claim for negligent infliction of emotional distress. We reject this contention.

## A.

A court should not grant a motion for directed verdict unless the evidence, viewed in the light most favorable to the non-moving party, compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained. If a trial court concludes that a reasonable jury could return a verdict in the plaintiff's favor, a defendant's directed verdict motion cannot be granted. *Fair v. Red Lion Inn,* 943 P.2d 431 (Colo. 1997).

In regard to negligent infliction of emotional distress, the jury was instructed that the evidence presented must be sufficient for it reasonably to conclude that defendant's negligence created an unreasonable risk of physical harm and caused plaintiff to be put in fear for her own safety, that her fear must have had physical consequences or resulted in long-continued emotional disturbance, and that plaintiff's fear must have been the cause of the damages she claimed. *See CJI–Civ.3d* 9:3 (1998); *Scharrel v. Wal–Mart Stores, Inc.,* 949 P.2d 89 (Colo.App.1997).

In addition to these elements, in a footnote, the supreme court in *Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877 (Colo.1994) (fn.3) indicated that such a claim requires proof that the plaintiff sustained physical injury or was in the "zone of danger."

If the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery. *Kimelman v. City of Colorado Springs,* 775 P.2d 51 (Colo.App.1988).

Recovery for emotional distress is permitted only if there are physical manifestations or mental illness. Examples of physical manifestations or mental illness include long-continued nausea or headaches or repeated hysterical attacks or mental aberrations. *Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (1978).

If a plaintiff fails to present evidence that fear for her own safety was the cause of the continuing emotional distress for which she sought treatment, then the defendant is entitled to a directed verdict on the plaintiff's claim of negligent infliction of emotional distress. *Scharrel v. Wal–Mart Stores, Inc., supra.*

Here, in regard to the fire, plaintiff's husband testified that the flames were at least five feet above the hood of the car and that a tire and window both exploded. He stated that, after the fire his wife was crying, trembling, and "into hysterics."

Plaintiff testified that she brought her husband the fire extinguisher, took their child across the street, and went back across to assist her husband in fighting the fire. She stated she was close enough to the car that she could have touched it. She also testified to witnessing the tire and window exploding and that, during the fire, she feared for her own safety. On cross-examination, plaintiff

testified that while she was not necessarily afraid when she first left the house to assist her husband in fighting the fire, she became afraid while doing so. This testimony would support a jury finding that plaintiff was subjected to an unreasonable risk of bodily harm, *see Scharrel v. Wal–Mart Stores, Inc., supra,* and was within the zone of danger.

■ Furthermore, the requirement of physical manifestation has likewise been satisfied. Plaintiff testified that, prior to the fire, her physical health was excellent, but in the days following the fire, she experienced such conditions as nausea, double vision, and lightheadedness. Accordingly, the trial court did not err in refusing to grant defendant's motion for a directed verdict.

### B.

■ Defendant also asserts that the trial court improperly gave the jury a "sudden emergency" instruction over defendant's objection. We are not persuaded.

■ The giving of an instruction on the sudden emergency doctrine is appropriate when sufficient evidence exists that a party acted in an emergency situation not caused by that party's own negligence. Further, a trial court has a duty to instruct the jury on sudden emergency when it is requested by a party and the request is supported by competent evidence of the existence of a sudden emergency. *Vu v. Fouts,* 924 P.2d 1129 (Colo.App.1996).

■ Even when the court instructs the jury on sudden emergency, the question whether the course of conduct chosen by the party under the circumstances is reasonable and prudent is a question of fact to be determined by the trier of fact, as is the question whether there is an emergency. *Stewart v. Stout,* 143 Colo. 70, 351 P.2d 847 (1960).

Here, the evidence supports the giving of a "sudden emergency" instruction as plaintiff requested. There is no evidence suggesting that plaintiff's conduct in any way caused the fire. Accordingly, we perceive no error in the giving of such an instruction.

### III.

■ Asserting that plaintiff did not establish by clear and convincing evidence any justification for an award of $396,000 in noneconomic damages, defendant further argues that the trial court erred in not reducing the award to $250,000. We do not agree.

Section 13–21–102.5(3)(a), C.R.S.1997, provides:

In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, *unless the court finds justification by clear and convincing evidence therefor.* In no case shall the amount of such damages exceed five hundred thousand dollars. (emphasis added)

■ While there must be a justification by clear and convincing evidence, the trial court is not required to make a specific finding of clear and convincing evidence. *Herrera v. Gene's Towing,* 827 P.2d 619 (Colo. App.1992).

In its order denying defendant's motion for post-trial relief, the trial court referred to the testimony of plaintiff's experts regarding the progressive course of MS, as well as plaintiff's own testimony, as clear and convincing evidence that an award in excess of $250,000 was appropriate.

Plaintiff's expert testified that, based on her symptoms, there was a probability that plaintiff was going to "end up in a wheelchair." The expert also testified that, while plaintiff may continue to work as a teacher, eventually she may have to reduce the quantity and quality of her teaching. Another of plaintiff's experts, a rehabilitative counselor who works with MS patients, testified as to difficulties that MS patients encounter as the disease progresses. Finally, plaintiff testified to the symptoms she has experienced since the fire.

Thus, clear and convincing evidence supports the award in excess of $250,000. Accordingly, we perceive no error in the court's refusal to reduce the award of noneconomic damages.

## IV.

■ Contending that §§ 5–12–102 and 13–21–101, C.R.S.1997, are in conflict, defendant asserts that § 13–21–101 allowing for prejudgment interest on future damages in cases involving personal injury violates its constitutional guarantees of equal protection and due process. We disagree.

### A.

Defendant argues that, because prejudgment interest cannot be awarded on future damages pursuant to the general interest statute, § 5–12–102, see *Life Care Centers v. East Hampden Associates Ltd.,* 903 P.2d 1180 (Colo.App.1995), the result is a difference in treatment of defendants who are held liable on a personal injury theory and defendants held liable on other theories. We do not agree.

Section 5–12–102 provides:

(1) Except as provided in 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Section 13–21–101(1) provides, in pertinent part:

In all actions brought to recover damages for personal injuries ... whether by negligence or by willful intent ... it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued.... When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount....

■ Statutes are presumed to be constitutional and a party asserting to the contrary bears the burden of proving that assertion beyond a reasonable doubt. *Zaner v. City of Brighton,* 917 P.2d 280 (Colo.1996).

■ If persons alleging disparate treatment are not similarly situated, then an equal protection challenge to a statute must fail. *State v. The Mill,* 887 P.2d 993 (Colo.1994).

■ When a classification does not involve a fundamental right, suspect class, or classification based on gender, the court must use a rational basis test to determine whether the statute violates the person's right to equal protection of the laws. *Rodriguez v. Schutt,* 914 P.2d 921 (Colo.1996).

■ Under a rational basis review, the party challenging the statute's constitutionality bears the burden of proving that the statutory classification either has no rational basis in fact or is not rationally related to a legitimate governmental purpose. If the classification is based on differences that are real and not illusory, then a classification is rationally based in fact. *Higgs v. Western Landscaping & Sprinkler Systems, Inc.,* 804 P.2d 161 (Colo.1991).

■ The receipt of interest on a judgment is not a fundamental right, nor does the statute at issue affect or create a suspect or quasi-suspect class. Therefore, any disparity of treatment of similarly situated individuals is subject to a rational basis review. *Rodriguez v. Schutt, supra.*

■ The purpose of § 5–12–102 is to discourage persons responsible for the settlement of claims from stalling or delaying payment until final settlement or judgment. *Bowen v. Farmers Insurance Exchange,* 929 P.2d 14 (Colo.App.1996).

■ The statute begins with the words "[e]xcept as provided in § 13–21–101," and then states that on the money that is wrongfully withheld interest is to be received from the date of wrongful withholding to the date of payment or the date of judgment, whichever first occurs. This language must be strictly construed. *See Mesa Sand & Gravel*

*Co. v. Landfill, Inc.,* 776 P.2d 362 (Colo. 1989).

█ Section 13–21–101, on the other hand, applies only to actions to recover damages for personal injury. Whereas § 5–12–102 serves to discourage delay of payment of a claim, this section serves both the purpose of compensating a party for the loss of use of money and encouraging the settlement of cases both pre- and post-trial. *Stevens v. Humana of Delaware, Inc.,* 832 P.2d 1076 (Colo.App.1992).

Accordingly, because the difference in the two statutes is founded on a rational basis, there is no violation of equal protection.

### B.

█ Defendant's due process argument appears to be that, since plaintiff's expert testified that $800,000 would provide for plaintiff's future economic losses, the jury's award does not entitle plaintiff to an award of interest. We find no merit in this argument.

█ When interest becomes due in accordance with the provisions of a statute is a matter to be assessed by the trial court, not by the jury. *Church v. American Standard Insurance Co.,* 764 P.2d 405 (Colo.App.1988).

Here, the jury's award was for $862,405 in economic damages and $396,000 in noneconomic damages. Prejudgment interest was added by the trial court. Accordingly, defendant was not denied due process of law.

The judgment is affirmed.

Judge METZGER and Judge ROY concur.