**Christine SMITH, Plaintiff–Appellant,**

v.

**BELLE BONFILS MEMORIAL BLOOD CENTER, Defendant–Appellee.**

No. 97CA0800.

Colorado Court of Appeals,
Div. V.

Sept. 3, 1998.

Rehearing Denied Oct. 29, 1998.

Certiorari Denied May 10, 1999.*

---

* Justice RICE does not participate.

Salmon, Lampert & Clor, P.C., John G. Salmon, S. Jane Mitchell, Victoria A. Tucker, Englewood, Colorado; Farrell, Goldstein, Seldin & New, Robert L. New, Englewood, Colorado; Smith & Young Law Offices, P.C., Susan Y. Young, Englewood, Colorado, for Plaintiff–Appellant.

Halaby, Cross, Liechty & Schluter, Theodore S. Halaby, Leslie L. Schluter, Denver, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

Plaintiff, Christine Smith, appeals from the summary judgment entered in favor of defendant, Belle Bonfils Memorial Blood Center (Blood Center). We affirm.

In 1993, plaintiff was admitted to St. Anthony Hospital to treat a broken hip. While awaiting surgery, she received a unit of blood provided by Blood Center which was contaminated with the Human Immunodeficiency Virus (HIV). As a result of the transfusion, plaintiff was later diagnosed with Acquired Immune Deficiency Syndrome (AIDS).

Plaintiff brought suit against the Blood Center alleging that the national blood banking industry, of which the Blood Center is a part, was negligent in its blood testing by failing to use an additional screening procedure. Under this procedure, blood donations

are frozen, quarantined for at least six months, and not released until the original donor returns and retests negative for HIV. According to plaintiff, the Blood Center had this readily available and proven scientific safeguard which, if used, would have enabled it to discover the contamination and reject the donated blood prior to giving it to her.

Blood Center denied industry-wide negligence and therefore its own liability. It asserted that the collected blood was donated and tested for HIV during the so-called "window period." This is the relatively short period when a donor is infected with the HIV/AIDS virus, but does not test positive on the antibody test because his or her immune system has not yet produced sufficient antibodies to the virus for them to be detected. In 1993, the window period was approximately twenty-two days from the date of infection.

In response to the Blood Center's motion for summary judgment, plaintiff submitted the affidavit and deposition of an expert witness who operates a blood and sperm bank. The expert runs a blood bank which stores autologous blood (blood of a donor stored for that donor's later use). The blood is maintained on a long-term basis by using a system of freezing the blood. The expert testified that, as an additional readily available and proven safeguard, all blood for transfusion should be frozen and held until after the expiration of the window period, with the donor being retested before transfusion of the blood.

According to plaintiff's expert, had this procedure been implemented in 1993, it would have prevented the transfusion of the HIV-infected blood to plaintiff. Blood Center responded with the deposition evidence of its own two experts who testified that the freezing and storing of blood cells was not a new process, but that its application to the national blood supply was not feasible. They testified that: (1) a large number of blood donors would be needed to implement the freezing and retesting method and such donors were simply unavailable; and (2) the opinion of plaintiff's expert lacked scientific validity because he had failed to explain how the freezing and retesting process could be applied on a large scale without crippling the nation's blood supply.

After considering the submissions, the trial court concluded that, although the testimony of plaintiff's expert was admissible under *United Blood Services v. Quintana*, 827 P.2d 509 (Colo.1992), it nevertheless did not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (*Daubert*). On that basis, the court granted summary judgment in favor of the Blood Center. It also denied plaintiff's motion for an evidentiary hearing.

## I.

■ Plaintiff contends the trial court erred in applying *Daubert* to determine the admissibility of the scientific evidence because Colorado continues to adhere to the test set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). We agree, but conclude the error was harmless.

At the present time, *Frye* remains the appropriate test in Colorado to determine the admissibility of novel scientific evidence. *See Lindsey v. People*, 892 P.2d 281 (Colo.1995); *Tran v. Hilburn*, 948 P.2d 52 (Colo.App. 1997). *See also Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631 (Colo.App.1998).

Under *Frye*, a trial court must determine whether the underlying theory or principle is generally accepted in the relevant scientific community, and whether the techniques used to apply the theory or principle are generally accepted in the relevant scientific community.

■ The level of acceptance in the scientific community should be assessed at the time the evidence is offered at trial. A trial court has considerable discretion in ruling upon the admissibility of evidence. A reviewing court will find an abuse of discretion only if the ruling is manifestly arbitrary, unreasonable, or unfair. However, whether general acceptance existed with regard to novel scientific evidence at the time of trial is a question of law that we review *de novo*. *See Lindsey v. People, supra.*

■ Here, it was undisputed that there is scientific support for the general process of

freezing and retesting blood. However, plaintiff failed to show that this procedure, when applied to the blood banking industry, was generally accepted in the scientific community. To the contrary, the trial court found that:

> [The] (freeze and retest) theory, applied on a mass level, has not been subjected to peer review or publication, nor has it been accepted in the scientific community.

This determination by the trial court is supported by expert testimony that a valid scientific technique exists which permits the freezing and quarantining of blood on a limited scale, but in order to implement plaintiff's theory on a mass level, the nation's blood supply would have to be drastically increased. Part of the existing supply would have to be used to begin the freeze and retest process, which would affect the already limited supply of blood presently needed. Plaintiff failed to show such a change could be implemented on a large scale without exhausting the market of available donors.

There is further record support for the trial court's finding that the scientific community had not embraced the feasibility of such a plan. In 1988, the FDA recommended that certain red blood cell donations be frozen and retested, but made no similar recommendation that the freeze and retest procedure be applied to the mass blood donation market. Similarly, in 1990, when the Food and Drug Administration (FDA) made recommendations regarding the prevention of HIV transmissions from blood donations, there was no mention of the freeze and retest procedure.

Contrary to plaintiff's contention, *Lindsey v. People, supra* did not require admission of the evidence. There, the supreme court noted that once the *Frye* standard has been met, any challenge to the implementation and execution of the scientific techniques goes to the weight to be accorded such evidence, not its admissibility.

Here, however, the trial court found with record support that the freeze and retest theory, applied on a mass level to blood banks, has not been accepted in the scientific community. Thus, plaintiff's scientific evidence did not meet the *Frye* standard.

■ Based on the above-described evidence, the trial court concluded that the testimony of plaintiff's expert should be disallowed. We reach the same conclusion and therefore reject plaintiff's assertion that the trial court erred in granting summary judgment in favor of Blood Center.

Even if we were to assume that *Daubert* applied, we would reach the same result.

■ In reviewing a trial court's decision disallowing scientific evidence under *Daubert*, an appellate court may not reverse the decision absent an abuse of discretion. *See General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

■ *Daubert* set forth the following factors to be considered in determining whether a theory or technique constitutes scientific knowledge: (1) whether the theory/technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the scientific community. *See* CRE 702.

■ As noted, plaintiff's freeze and retest technique has been tested and implemented for sperm donations and limited blood donations. However, the record fully supports the trial court's finding that the theory has not yet been tested, subjected to peer review, or generally accepted within the scientific community for large scale application. *See Daubert, supra*, 509 U.S. at 591, 113 S.Ct. at 2796, 125 L.Ed.2d at 481–82 (discussing importance of "fit," *i.e.*, consideration that "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes").

We therefore perceive no abuse of discretion by the trial court in disallowing the expert testimony under the *Daubert* standard.

## II.

■ Finally, plaintiff contends the trial court erred in denying her request for a

*Daubert* evidentiary hearing. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311 (9th Cir.1995), *cert. denied,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995) (proceedings after remand) (where opposing party raises a material dispute regarding admissibility of expert scientific evidence, court must hold a hearing).

However, a request for such a hearing was not timely made here. Further, the parties fully briefed the issues surrounding the admissibility of the scientific evidence, they had a full and fair opportunity to depose the experts, and plaintiff did not indicate what additional evidence she would have presented at such a hearing. We therefore perceive no error by the trial court in failing to conduct such a hearing.

Judgment affirmed.

Judge VOGT and Judge STERNBERG ** concur.