**Homer JAMES, Plaintiff,**

v.

**COORS BREWING COMPANY, and
Yvonne Mannon, Defendants.**

No. Civ.A. 97–B–1002.

United States District Court,
D. Colorado.

Nov. 5, 1999.

Kara T. Birkedahl, Steven Silvern, Edmund M. Monas, Silvern Law Offices, P.C., Denver, CO, for plaintiff.

K. Preston Oade, Jr., Holme Roberts & Owen, LLP, Denver, CO, Daniel R. Satriana, Steven M. Gutierrez, Hall & Evans, Denver, CO, Timothy P. Schimberg, Susan Hahn, Fowler, Schimberg & Flanagan, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This Order comes upon the following post-judgment motions: Defendant Mannon's Motion for Amendment of Judgment; Plaintiff James' Motion for Prejudgment Interest; Defendants' Motion for New Trial or, in the Alternative, Motion for Judgment Notwithstanding the Verdict; Plaintiff James' Motion to Review Taxation of Costs; and Defendant Mannon's Motion to Review Taxation of Costs. The issues are adequately briefed and oral argument will not materially aid their resolution. For the reasons set forth below, I grant in part and deny in part the post-judgment motions. I address each motion in the order filed.

### I.

On August 4, 1999, at the conclusion of all the evidence in this two and one-half week employment trial, the jury returned its verdict for Plaintiff Homer James. The jury awarded economic damages of $325,-300.00 to Homer James, against Coors, on his claim for Breach of Contract. The jury awarded non-economic damages of $200,000.00, economic damages of $5,000.00, and punitive damages of $200,-000.00 to Homer James, against Coors, for his claim of defamation. The jury awarded non-economic damages of $100,000.00, economic damages of $1.00, and punitive damages of $100,000.00 to Homer James, against Yvonne Mannon, on his claim for

Intentional Interference with Employment Contract. The jury awarded non-economic damages of $200,000.00, economic damages of $5,000.00, and punitive damages of $200,000.00 to Homer James, against Ms. Mannon, for his claim of defamation as to statements to Coors investigators. Finally, the jury awarded non-economic damages of $25,000.00, economic damages of $1.00, and punitive damages of $75,000.00 to Homer James, against Ms. Mannon, for his claim of defamation as to statements to law enforcement authorities.

## II. Defendant Mannon's Motion for Amendment of Judgment

On August 6, 1999, I entered a total judgment against Ms. Mannon in the following amounts:

| | | |
|---|---|---|
| **Non-economic Damages:** | $325,000.00 | |
| **Economic Damages:** | $ 5,002.00 | ($5,000 of which is joint and several with Coors) |
| **Punitive Damages:** | $325,000.00 | |

The judgment against Ms. Mannon stems from Colorado state law claims of intentional interference with contract and defamation. She moves, pursuant to Rule 59(a)(4), to amend this judgment to reflect Colorado's statutory caps on damages. I grant the motion to amend. Because this Order substantively changes the earlier judgment, the new date of judgment is the date of the amended judgment. *See, e.g., Cornist v. Richland Parish School Board,* 479 F.2d 37, 39 (5th Cir.1973).

In 1986, Colorado's legislature passed several tort reform statutes limiting the amounts of damages defendants must pay in actions brought under Colorado law. *See, e.g.,* C.R.S. §§ 13–21–111.5 (establishing pro rata liability for multiple defendants in tort cases); 13–21–102 (limiting the total amount of punitive damages against any defendant to the amount of actual damages awarded); and 13–21–102.5 (limiting damages for non-economic losses). The introductory paragraph to C.R.S. § 13–21–102.5 states:

> The general assembly finds, determines, and declares that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries.

C.R.S. § 13–21–102.5(1). In finding that such awards are unduly burdensome, Colorado's General Assembly implied that enactment of the tort reform statutes would serve to protect individual defendants from excessive damage verdicts while maintaining sufficient awards for injured plaintiffs. *See General Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (Colo.1994).

The two tort reform statutes at issue in this motion state, in relevant part:

> C.R.S. § 13–21–102.5(3)(a): In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor. In no case shall the amount of such damages exceed five hundred thousand dollars.

> C.R.S. § 13–21–102(1)(a): In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages

shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.

Ms. Mannon argues that these provisions mandate reduction of the judgment against her for noneconomic damages to $250,-000.00 and punitive damages to $255,002.00 (reduced to equal the new amount of noneconomic damages plus economic damages). Such a ruling would constitute a total reduction of $144,998.00.

## A. Non-economic Damages

Section 13–21–102.5(3)(a) sets $250,000 as the presumptive limit for non-economic damage awards. This amount can be exceeded only if I find justification by "clear and convincing evidence." Colorado case law reflects that this standard permits me to exceed the $250,000 cap only in extreme circumstances. *See, e.g., Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 639 (Colo.App.1998) (Clear and convincing evidence standard met when "[p]laintiff's expert testified that, based on her symptoms, there was a probability that plaintiff was going to 'end up in a wheelchair.' "). Legislative history of this section shows that the clear and convincing exception is a "relief valve" in cases involving "seriously or desperately" injured plaintiffs. *See General Elec. Co.*, 866 P.2d at 1365 (quoting Senate Floor Debate on S.B. 67 Before the Full Senate, 55th Gen. Assembly, 2d Reg. Sess., 2d Reading (Audio Tape 86–14, Feb. 25, 1986)).

■ Citing no law, Mr. James argues that the presumptive statutory cap for non-economic damages does not apply to damages for loss of reputation. "Non-economic loss or injury" is defined as *"nonpecuniary harm* for which damages are recoverable by the person suffering the direct or primary loss or injury, *including* pain and suffering, inconvenience, emotional stress, and impairment of the quality of life." C.R.S. § 13–21–102.5(2)(b) (emphasis added). I conclude that damages for loss of reputation, absent evidence of pecuniary harm, fall squarely within this statutory definition. Loss of reputation damages reflect harm that is neither mon-

etary nor financial in nature. Although the statute lists several examples of nonpecuniary harms, this list is preceded by the word "including" and I will not limit the covered harms to those specifically enumerated. *See, e.g., Arnold v. Colorado Dept. of Corrections*, 978 P.2d 149, 151 (Colo.App.1999) ("the word 'include' is ordinarily used as a word of extension or enlargement and is not definitionally equivalent to the word 'mean.' "). Further, the jury in this case was instructed that "non-economic damages," for purposes of both the defamation and intentional interference with contract claims, include "impairment to the Plaintiff's reputation." (*See*, Jury Instructions 17 and 35). This complies with the Colorado Jury Instructions definitions. CJI–Civ.4th § 22:25 (1999). At no time during preparation of the jury instructions did Mr. James or his counsel object to this instruction.

Special damages are limited to specific monetary losses, if any, which a plaintiff had as a result of a defendant's defamatory statement. CJI–Civ.4th 22:11 (1999). In contrast, actual damages may include, inter alia, impairment of reputation, mental anguish, physical suffering, injury to credit standing, and loss of income. CJI–Civ.4th 22:12. In this case, Mr. James neither proved nor was awarded special damages. Actual damages, however, may include components of economic or noneconomic loss (i.e. mental anguish is noneconomic while loss of income is economic). Colorado Jury Instructions are persuasive that Colorado law recognizes pure loss of reputation as non-economic loss. Significantly in this case, there was no evidence of economic loss as a function of loss of reputation. Under the circumstances of this case, I conclude that damages for loss of reputation are "non-economic damages" and subject to the statutory limits.

I further conclude that no clear and convincing evidence exists to exceed the presumptive, statutory limit of $250,000.00 for Mr. James' non-economic injuries.

The extent of his injuries, although significant, have not been shown to reach the level of "serious" or "desperate" as contemplated by the legislature and reflected in Colorado case law. *See, e.g., Colwell,* 973 P.2d at 639. Therefore, the non-economic damage award to Mr. James and against Ms. Mannon is amended and reduced to $250,000.00 pursuant to C.R.S. § 13–21–102.5(3)(a), plus prejudgment interest as addressed later in this Order.

### B. Punitive Damages

Section 13–21–102 limits the amount of exemplary, or punitive, damages to the amount of "actual damages awarded." *See, e.g., Lira,* 832 P.2d at 243. This mandates a "one-to-one limitation of exemplary damages to actual damages awarded." *Id.* The Colorado Supreme Court holds that this one-to-one limit refers to the amount of compensatory damages *after* statutory reductions are made. *See id.* at 245. Compensatory or actual damages are made up of both economic and non-economic damages. Because I reduced Ms. Mannon's non-economic damages from $325,000.00 to $250,000.00 under the statutory cap, I must also reduce punitive damages to reflect this amended amount. Therefore, I initially reduce the award of punitive damages from $325,000.00 to $255,002.00 to reflect the amended amount of non-economic damages ($250,000.00) plus economic damages ($5,002.00).

Mr. James argues that prejudgment interest, assessed under C.R.S. § 13–21–101, must first be added to the "actual damages" awarded and then this increased amount must be used in the one-to-one limitation of exemplary damages. No Colorado cases address whether prejudgment interest should be considered "actual damages" for purposes of C.R.S. § 13–21–102(1)(a). The Colorado Supreme Court has determined that prejudgment interest should not accrue on exemplary damages themselves. *See Seaward Construction Co. v. Bradley,* 817 P.2d 971 (Colo.1991); *see also Lira,* 832 P.2d at 246 ("prejudgment interest does not apply to exemplary damages."). However, Mr. James does not argue that prejudgment interest should accrue on the exemplary damages. Instead, he argues that the exemplary damages, limited to the amount of actual damages, should reflect the prejudgment interest assessed under law against the actual damages.

In interpreting a statute, I first look to the statutory language. *See Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39, 42 (Colo.1992). Section 13–21–102(1)(a) gives no clear answer. It states that an award of exemplary damages "shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." It does not define "actual damages." The Colorado Supreme Court's construction of the statutory language in *Lira* is instructive. In *Lira,* the Court determined that the language of § 13–21–102(1)(a) distinguished between the amount "assessed" by the jury and the amount finally "awarded." *Lira,* 832 P.2d at 246. The Court decided that the one-to-one limit of exemplary damages should mirror the damages recovered in accordance with a final order for judgment, or the statutorily reduced compensatory amount, rather than the amount originally "assessed" by the jury. Thus, under the reasoning of *Lira,* if the jury originally assessed $325,000.00 in non-economic damages, but I reduce this amount to $250,000.00, the amount of exemplary damages would equal this reduced award. I have applied this reasoning in the above reduction of exemplary damages.

■ However, in the context of prejudgment interest, this reasoning cuts against Ms. Mannon. Prejudgment interest on damages awarded in a personal injury action, like this one, is specifically authorized by statute. Indeed, in Colorado, an award of prejudgment interest to the prevailing plaintiff is mandatory: "When such interest is so claimed, *it is the duty of the court* in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such

amount calculated at the rate of nine percent per annum ... and to include the same in said judgment as a part thereof." C.R.S. § 13–21–101(1) (emphasis added). "Prejudgment interest *is a form of compensatory damages* and represents a legislatively prescribed award for delay in a plaintiff's receipt of money to which he or she is legally entitled." *Witt v. State Farm Mutual Auto. Ins. Co.,* 942 P.2d 1326, 1327 (Colo.App.1997) (emphasis added); *see also Allstate Ins. Co. v. Starke,* 797 P.2d 14, 19 (Colo.1990) ("prejudgment interest is an *element of compensatory damages* in actions for personal injuries, awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor.") (emphasis added); *Heid v. Destefano,* 41 Colo.App. 436, 586 P.2d 246, 247 (1978) (*"prejudgment interest is an additional item of compensatory damages."*) (emphasis added). The purpose of an award of prejudgment interest under § 13–21–101(1) is to "compensate a successful plaintiff for the loss of the use of the money to which he has been entitled." *See Heid,* 586 P.2d at 247. Prejudgment interest is, therefore, necessary to make the injured party whole. The Colorado Supreme Court in *Seaward Construction,* 817 P.2d at 975 stated, in relevant part:

> The addition of prejudgment interest to a judgment for compensatory damages recognizes that the loss caused by the tortious conduct occurred at the time of the resulting injury but that the damages paid to compensate for that loss are not received by the injured party until later. *Allstate Ins.,* 797 P.2d at 19; *Coale v. Dow Chemical Co.,* 701 P.2d 885, 890 (Colo.App.1985). "The interest is compensatory and is awarded to indemnify the plaintiff for the loss of earnings on that money due to its delayed payment." *Coale,* 701 P.2d at 890. Prejudgment interest on compensatory damages, therefore, is necessary to make the plaintiff whole.

*Id.*

■ Prejudgment interest, under Colorado law, is part and parcel of compensatory damages. Section 13–21–102(1)(a) states that exemplary damages shall be reduced so as not to exceed the amount of "actual damages awarded to the injured party." Rather than forcing strained interpretations, Colorado law requires that statutory terms be given their common, ordinary meaning. *See Triad Painting Co. v. Blair,* 812 P.2d 638, 644 (Colo.1991). Accordingly, I hold that prejudgment interest on damages should be considered as a part of "actual damages" within the meaning of § 13–21–102(1)(a).

Pursuant to the Judgment Order dated August 6, 1999, Mr. James is entitled to an award of prejudgment interest pursuant to C.R.S. § 13–21–101. Under the rationale of *Lira,* I conclude that prejudgment interest on "actual damages" should be assessed before reducing the exemplary damages award. I am not applying prejudgment interest to the punitive damages. *See, e.g., Seaward,* 817 P.2d 971. Instead, in the limited instance before me, where I must reduce a jury's award of exemplary damages to the statutory limit of the one-to-one ratio with actual damages, I conclude that prejudgment interest is appropriately calculated into the "actual damages." Thus, the judgment is amended, pursuant to Rule 59(a)(4), to reflect that Mr. James' award of exemplary damages will be reduced to equal the amount of economic damages, non-economic damages, and appropriate prejudgment interest awarded to Mr. James, or, $250,000.00 plus $5,002.00 plus the requisite prejudgment interest. Calculation of prejudgment interest is discussed later in this opinion.

### III. Mr. James' Motion for Prejudgment Interest

The next post-judgment motion filed with this Court concerns the award of prejudgment interest. Mr. James requests that prejudgment interest be added to the August 6, 1999 judgment against Defendants Coors and Mannon.

## A. Prejudgment Interest Against Defendant Coors

Mr. James requests prejudgment interest for both his breach of contract and defamation claims against Coors. Mr. James was awarded $325,300.00 for loss of earnings and benefits caused by Coors' breach of contract. Mr. James was further awarded $200,000.00 in non-economic damages, $5,000.00 as economic loss, and $200,000.00 as punitive damages for his defamation claim against Coors. Coors has not responded to Mr. James' motion for prejudgment interest.

### (1) Breach of Contract

Mr. James contends that pursuant to Colorado's moratory interest statute, C.R.S. § 5–12–102(1)(a), he is entitled to the value to Coors of the funds wrongfully withheld at a rate of 16% per annum. Section 5–12–102(1)(a) states in relevant part:

(1) Except as provided in section 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be *an amount which fully recognizes the gain or benefit realized by the person withholding such money or property* from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

(emphasis added). Mr. James argues that the value, to Coors, of the funds wrongfully withheld reflects a rate of 16% per annum: "This is a conservative rate in light of the increase in the major market indices in the last several years." (Motion for Prejudgment Interest, p. 1). However, Mr. James provides no evidence, affidavits or otherwise, to support this asserted percentage. He states that if Coors disputes the 16% estimate, discovery and a brief evidentiary hearing is necessary to determine the value to Coors of this money. Because Coors has not responded, this is not necessary. I resolve this issue as a matter of law.

Citing relevant Colorado law, the Tenth Circuit has held:

if moratory interest is justified *but there is no proof of gain from the wrongful retention of money,* the trial court is within its discretion in measuring moratory interest damages at the statutory rate. *E.B. Jones Constr. Co. v. City and County of Denver,* 717 P.2d 1009, 1015 (Colo.Ct.App.1986). Where, as here, prejudgment interest is sought pursuant to Colo.Rev.Stat. § 5–12–102(1)(a), we conclude that *a trial court faced with a record devoid of evidence relating to the amount of the withholding party's gain or benefit lacks discretion to award interest at a rate other than the statutory rate of 8% per annum.*

*Chaparral Resources, Inc. v. Monsanto Co.,* 849 F.2d 1286, 1291 fn. 4 (10th Cir. 1988) (emphasis added); *see also Alfred Brown Co. v. Johnson–Gibbons & Reed Western Paving–Kemper,* 695 P.2d 746, 749 (Colo.App.1984) ("In the absence of any proof as to the guilty party's gain, the statutory rate of interest should be awarded as damages."). Absent proof of the amount of gain realized by a defendant in wrongfully withholding funds, a court has no basis upon which to award prejudgment interest pursuant to C.R.S. § 5–12–102(1)(a) and must turn to the statutory default in C.R.S. § 5–12–102(1)(b). *See, e.g., Chaparral,* 849 F.2d at 1291. Because Mr. James has submitted no evidence in support of his suggested rate of 16% per annum, I cannot award such an amount and must turn to the 8% provided by law.

Further, as Mr. James implicitly recognizes, prejudgment interest is not applied to a lump sum of damages in an action for breach of contract. *See, e.g., Shannon v. Colorado School of Mines,* 847

P.2d 210 (Colo.App.1992). The purpose of C.R.S. § 5–12–102 is to recognize the time value of money. *See id.* at 213. This statute "represents a legislative determination that persons suffer a loss when they are deprived of [money or] property to which they are legally entitled." *See Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 364 (Colo.1989). However, prejudgment interest is allowed only on past losses. *See Shannon,* 847 P.2d at 213. "[U]nder § 5–12–102, plaintiff is entitled to prejudgment interest only on the loss of income accrued as of the date of trial." *Id.* In *Shannon,* the Colorado Court of Appeals determined that the most accurate and reasonable indication of a plaintiff's pre-trial loss is the amount of back pay computed by the plaintiff's expert, without interest. *See id.*

■■■ Based on established principles of Colorado law, I conclude that Mr. James should receive prejudgment interest in an amount of 8% per annum only on the amount of past damages as established by his expert, Dr. Patricia Pacey. In his motion for prejudgment interest, Mr. James does not provide evidentiary support for his request of a 16% per annum rate of interest. Therefore, I resort to the presumptive statutory default rate of 8% per annum. I agree with Mr. James that May 14, 1996, is the date of the breach of contract, as that is when his employment was terminated. (Pretrial Order, p. 8). Coors does not dispute the expert's base figure for past losses of $152,400.00. (Motion for Prejudgment Interest, p. 1). Therefore, prejudgment interest is properly calculated on $152,400.00 at 8% per annum from May 14, 1996 through the date of this amended judgment, compounded annually. Under Colorado law, it is appropriate to apply interest to this sum even though it would have been due in periodic payments. *See, e.g., Vento v. Colo. Nat'l Bank–Pueblo,* 907 P.2d 642, 647 (Colo.App.1995).

### (2) Defamation

■■■ Prejudgment interest for defamation damages against Coors is calculated

pursuant to C.R.S. § 13–21–101 which allows for a statutory rate of interest at 9% per annum from the date the action accrued in all tort claims for personal injuries. "[D]efamation is a personal injury and not an injury to property. Consequently, the ... automatic prejudgment interest provisions of § 13–21–101 ... pertaining to judgments entered for personal injury, apply." *Brooks v. Jackson,* 813 P.2d 847, 848–849 (Colo.App.1991). Furthermore, it is my duty to apply this statutory prejudgment interest:

> .... When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount calculated at the rate of nine percent per annum....

C.R.S. § 13–21–101(1). Again, Coors has not responded to dispute Mr. James' calculations or reasoning. Therefore, I apply the statutory rate of 9% to $205,000.00 (non-economic and economic losses only). *See, e.g., Seaward Construction,* 817 P.2d 971 (prejudgment interest does not accrue on exemplary damages). I use the accrual date of January 8, 1997, the date Mr. Krantz defamed Mr. James. (Motion for Prejudgment Interest, p. 2). This amount is compounded annually from May 14, 1997, the date the lawsuit was filed, through the date of this Order.

### B. Prejudgment Interest Against Defendant Mannon

■ Mr. James also moves for prejudgment interest against Ms. Mannon. Both of the claims against Ms. Mannon, intentional interference with contract and defamation, sound in tort and are controlled by C.R.S. § 13–21–101(1). Mr. James bases his argument for prejudgment interest on compensatory damages of $330,002.00. However, because I have adjusted the judgment to reflect Colorado's statutory caps in § 13–21–102.5, the correct amount of compensatory damages for these claims is $255,002.00 ($250,000.00 non-economic

**1258**

damages plus $5,002.00 economic damages). *See, e.g., Seaward Construction,* 817 P.2d 971 (prejudgment interest does not accrue on exemplary damages).

■ In her response, Ms. Mannon argues that the cap of $250,000.00, in C.R.S. § 13–21–102.5, limits the total amount of non-economic damages, inclusive of pre-judgment interest, that a defendant must pay. Therefore, she argues that under the statutory cap she cannot be assessed pre-judgment interest on top of non-economic damages of $250,000.00. Instead, she argues that the economic damages of $5,002.00 is the only amount on which I can apply prejudgment interest of 9% per annum. However, Colorado law is to the contrary. Although I have found no cases directly addressing this issue, the Colorado Court of Appeals upheld a judgment that applied statutory prejudgment interest to an amount of capped non-economic damages:

> After hearing the evidence and deliberating, the jury awarded the plaintiff $1,000,000 for non-economic losses and $5,000,000 for economic/medical losses.... Pursuant to statute, the trial court reduced the non-economic losses to $500,000, see § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A), and entered judgment against Humana Hospital for 45% of $5,500,000. *The trial court added pre-judgment interest.*

*Stevens v. Humana of Delaware, Inc.,* 832 P.2d 1076, 1077 (Colo.App.1992) (emphasis added). The Court of Appeals upheld this award. *See id.* Further, the statute indicates that I am under a duty to award prejudgment interest on top of a $250,000.00 damage award: "it is the duty of the court in entering judgment for the plaintiff in such action to *add to the amount of damages* ... found by the court, interest on such amount calculated at the rate of nine percent per annum." C.R.S. § 13–21–101(1) (emphasis added). This provision requires that I add such interest to the amount of damages awarded. In accordance with the portion of this opinion concerning punitive damages, I

conclude that the statutory cap is not inclusive of prejudgment interest.

Therefore, I apply prejudgment interest, pursuant to C.R.S. § 13–21–101(1), at a rate of 9% per annum to $255,002.00 (non-economic and economic losses only) using the accrual date of May 14, 1996. (Motion for Prejudgment Interest, p. 2). *See, e.g., Seaward Construction,* 817 P.2d 971 (prejudgment interest does not accrue on exemplary damages). This amount is compounded annually beginning May 14, 1997, the date the lawsuit was filed through the date of this amended entry of judgment. This newly adjusted amount of actual damages plus appropriate prejudgment interest is then used to calculate the one-to-one ratio of punitive damages.

## IV. Defendants' Motion for New Trial or, in the Alternative, Motion for Judgment Notwithstanding the Verdict

Defendants Coors and Ms. Mannon jointly move for a new trial or, in the alternative, for a judgment notwithstanding the verdict. After a review of the pleadings, I deny the motion in its entirety. A twelve-day trial to the jury was commenced on July 19, 1999. The jury returned a verdict in favor of Mr. James and against the Defendants. I entered judgment on August 6, 1999, in accordance with the verdict. The Defendants filed their joint motion for a new trial pursuant to Rules 50 and 59 on August 30, 1999. Mr. James argues that Defendants' motion is untimely and therefore I have no jurisdiction to address it.

■ Rule 59(b) states that a "motion for a new trial shall be filed no later than 10 days after entry of the judgment." Rule 50(b) states that a "movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59." This ten day filing period is jurisdictional. *See, e.g., Collard v. United States,* 10 F.3d 718 (10th Cir.1993). The judgment in this

case was entered on August 6, 1999 and Defendants filed their motion more than ten days later. Although this judgment was corrected on August 20, 1999, this correction only went to a clerical error. *See, e.g., Collard,* 10 F.3d 718. However, today's Order, substantively amending the earlier judgment, supersedes that judgment and the ten days should run anew. The rule in the majority of circuits is that:

the second judgment prevails and begins the running of the 10–day limitation, if it is a superseding judgment making a change of substance which "disturbed or revised legal rights and obligations." *Federal Trade Comm'n v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 211–212, 73 S.Ct. 245, 248– 249, 97 L.Ed. 245 (1952). *See Federal Power Comm'n v. Idaho Power Co.,* 344 U.S. 17, 19–22, 73 S.Ct. 85, 86–87, 97 L.Ed. 15 (1952); *Zimmern v. United States,* 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118 (1936). However, if the Court does no more in the second judgment than make a clerical change, such as correct the names of parties or dates, the time for filing motions does not start to run from entry of the second judgment, but rather runs from date of the first judgment. *See Department of Banking v. Pink,* 317 U.S. 264, 63 S.Ct. 233, 87 L.Ed. 254 (1942); *United States v. 1,431.80 Acres of Land,* 8 Cir., 1972, 466 F.2d 820; *Albers v. Gant,* 5 Cir., 1970, 435 F.2d 146; *Lieberman v. Gulf Oil Corp.,* 2 Cir., 1963, 315 F.2d 403.

*Cornist,* 479 F.2d at 39. Because this Order does not merely amend clerical-type mistakes, it prevails and the date of the amended judgment constitutes the new date of judgment. Therefore, Defendants' motion is timely.

As grounds for a new trial, Defendants claim that this court erred in two instances: (1) an evidentiary ruling with respect to the Rule 404(b) submissions; and (2) an evidentiary ruling on Mr. James' Rule 412 motion. Defendants argue that my rulings on these motions prejudiced the Defendants and adversely affected their right to a fair trial by admitting testimony from Ms. Mannon's co-workers regarding her workplace misconduct during the time she worked with Mr. James and by excluding evidence of alleged incidents involving Mr. James that took place 15 to 25 years ago.

■ It is well settled that the district court has broad discretion in deciding whether to grant a motion for a new trial under Rule 59. *See Royal College Shop v. Northern Ins. Co. of New York,* 895 F.2d 670, 677 (10th Cir.1990). Such a motion may be granted when the court believes the verdict to be against the weight of the evidence, when prejudicial error has entered the record, or when substantial justice has not been done. *McHargue v. Stokes Division of Pennwalt Corp.,* 912 F.2d 394, 396 (10th Cir.1990). Further, I may only grant a motion for judgment notwithstanding the verdict if "the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found; we must construe the evidence and inferences most favorably to the nonmoving party." *Royal College Shop,* 895 F.2d at 677.

■ Both grounds for the Defendants' motion for a new trial concern my rulings on evidentiary motions. The admission or exclusion of evidence lies within my sound discretion. *See Mason v. Texaco, Inc.,* 948 F.2d 1546, 1555 (10th Cir.1991) ("A district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties."); *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1365 (10th Cir.1987). ("[T]he admission of evidence is largely a matter of the district court's discretion. In the absence of manifest error, we will not reverse the district court's decision to admit [o]r refuse admission of evidence."). Before a new trial may be granted on the ground of prejudicial evidentiary rulings, the ruling must be shown to have been erroneous. "No error in either the admission or the exclusion of evidence and no error in any ruling or order or in anything done or omitted by the trial court or by

the parties is ground for granting a new trial or for setting aside a verdict unless the error or defect affects the substantial rights of the parties." *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir.1978); *see also* Rule 61; *Harris v. Quinones*, 507 F.2d 533 (10th Cir.1974); *Herron v. Rozelle*, 480 F.2d 282 (10th Cir.1973).

Here, I was presented with motions and arguments regarding the exclusion of evidence pursuant to Rules 412, 404(b), and 403. All parties filed briefs or made arguments in support of their respective positions, each of which detailed factors to be considered. I engaged in a balancing and weighing of the prejudicial effect versus the probative value of the evidence and researched the purposes behind both of these rules of evidence and made my rulings, correctly, in my view. Moreover, I cannot conclude that my ruling affected a substantial right of the Defendants. Thus, I deny Defendants' motion for a new trial pursuant to Rule 59. Further, because I cannot find that the evidence points but one way, I deny Defendants' alternative motion for judgment notwithstanding the verdict pursuant to Rule 50. I conclude that the jury's decision was a reasoned and reasonable one.

## V. Plaintiff's and Defendants' Motions to Review Taxation of Costs

On September 17, 1999, the Clerk of the Court entered the Bill of Costs in the total amount of $6,951.76, in favor of Mr. James and against Defendants Coors and Ms. Mannon. 28 U.S.C. § 1920. On September 24, 1999, both Mr. James and Ms. Mannon filed motions to review the Clerk's taxation of costs. For the reasons set forth below I grant in part and deny in part these motions.

### A. Mr. James' Motion to Review Taxation of Costs

Mr. James requests that I award additional costs with respect to copies obtained for use in the case and costs incident to the taking of depositions. Following a hearing on September 15, 1999, the Clerk allowed $1,537.77 of the requested $3,150.77 for copies of documents by Mr. James. The Clerk taxed costs for copies of exhibits to Plaintiff's responses to summary judgment and for the trial exhibit notebooks. The Clerk rejected Mr. James' request for costs of copies of materials obtained from Coors pursuant to disclosure and discovery responses. Mr. James now requests that I increase the amounts awarded.

Awardable costs are set forth in 28 U.S.C. § 1920 and include "fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The District Court has discretion in awarding costs. *See Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995). I uphold the Clerk's denial of the extra copying costs requested by Mr. James. The costs denied represented materials obtained from Defendant Coors by Mr. James pursuant to Rule 26(a)(1), and consisted of investigative materials generated by Coors and Mr. James and Ms. Mannon's employment files. Although Mr. James asserts that "much of this material was also used in connection with the summary judgment motions and at trial," he points to no specific examples of its evidentiary use. *See, e.g., United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D.Colo.1997) ("The phrase 'for use in the case' refers to materials actually prepared for use in presenting evidence to the court."). Further, Mr. James has not separated out costs for copies he alleges were used in questioning witnesses and as exhibits at trial. Because I have discretion to deny these costs, I conclude that the aggregate documents, as presented by Mr. James, were not "necessarily obtained for use in this case."

Further, in the Bill of Costs submitted by Mr. James, he requested that Defendants be taxed $14,877.10 for costs incident to the taking of depositions. He itemized three categories of depositions: those used at trial (for impeachment purposes), totaling $8,758.15; those necessary to prepare

for the testimony of witnesses appearing in court, totaling $2,539.95; and those depositions not specifically used at trial but used in responses to summary judgment, totaling $3,579.00. The Clerk approved only the final category, totaling $3,579.00. Mr. James now requests an additional $11,298.10 for the costs of the other categories of depositions.

■■■■■ Section 1920(2) lists as properly taxable costs, "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." I agree with Mr. James that the depositions used at trial for impeachment of witnesses are "necessarily obtained for use in the case," and should be taxed to the Defendants. As this district has held:

> There is a presumption in favor of the award of costs.... When copies of depositions are reasonably necessary to the litigation, the resulting costs are generally allowable.... *Ramos v. Lamm*, 713 F.2d 546, 560 (10th Cir.1983); ... Where the deposition transcript is actually used at trial to impeach the witness, costs should be allowed....
>
> The remainder of the depositions listed were not introduced as evidence or used to impeach. Depositions taken solely for discovery purposes are not taxable.... Plaintiff has failed to prove that the depositions at issue were reasonably necessary to the litigation.

*Stahl v. Sun Microsystems, Inc.*, 139 F.R.D. 173, 174 (D.Colo.1991) (internal citations omitted); *see also Ramos v. Lamm*, 713 F.2d 546, 560 (10th Cir.1983) ("When copies of the depositions are reasonably necessary to the litigation of the case, the costs of those copies are allowed pursuant to subsection 4."). Thus, I award costs for those depositions used at trial for purposes of impeachment, $8,758.15. I also award costs for the deposition of Plaintiff Homer James, $596.30, as conceded by Defendants. However, I decline to award costs for the remaining depositions that Mr. James characterizes as "necessary to prepare for the testimony of witnesses who appeared in court." Mr. James has failed to show that these depositions were reasonably necessary to the litigation and has not specified how they were used to prepare the witnesses. Likewise, although he argues that *most* of these depositions were used in the summary judgment response, Mr. James does not separate costs which can be attributed to depositions used in the brief. I deny these requested costs. Therefore, I affirm the Clerk's taxation of costs for copies but increase the taxation of costs for depositions by $9,354.45.

## B. Defendant Mannon's Motion to Review Taxation of Costs

Defendant Mannon objects to certain deposition costs taxed by the Clerk of the Court. As noted, Mr. James separated his deposition costs into three categories, only one category was awarded by the Clerk: "Depositions used in Summary Judgment Responses." Ms. Mannon argues that certain of these depositions are not recoverable as costs.

■■■■ Transcription costs for depositions referred to in summary judgment responses, but not used at trial, may be taxed if the depositions were "actually utilized by the court in considering [the defendant's] motion for summary judgment." *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir.1997) (internal citations omitted). Ms. Mannon notes that in my Order on summary judgment, I only cite two of the nine contested depositions. She objects to the taxation of costs of the other seven deposition transcripts. However, in *Tilton*, it was specifically noted that the district court did not expressly cite to each and every deposition in its written order and still deposition costs were allowed. Rather, the court indicated that it considered all depositions submitted in determining whether summary judgment was appropriate. Here, with the exception of two, all of the at-issue depositions were also cited by Defendants Coors and Scherschlight in their summary judgment

reply briefs. My practice, as a federal judge, is to specifically consider each and every deposition relied upon or attached to summary judgment pleadings, whether or not I cite to them in my Order. Because the contested depositions were used by Mr. James in his summary judgment response and, most were also used by Defendants, I find that these are appropriate costs "necessarily obtained for use in the case," and utilized by me in considering the summary judgment motion. Therefore, I do not disturb this portion of the Clerk's award.

## VI. Summary

In conclusion, I amend the August 6, 1999 judgment to reduce non-economic damages against Ms. Mannon from $325,000.00 to $250,000.00. Prejudgment interest, at a rate of 9% per annum, will accrue on the total compensatory damages against Ms. Mannon, $255,002.00, using the accrual date of May 14, 1996. This amount is compounded annually beginning May 14, 1997 through entry of this judgment. Accordingly, I also reduce from $325,000.00 punitive damages against Ms. Mannon to reflect the new amount of actual damages, $255,002.00 plus prejudgment interest on the actual damages. I allow prejudgment interest at 8% per annum on breach of contract past damages against Coors of $152,400.00, from May 14, 1996 through the entry of this judgment, compounded annually. I further allow prejudgment interest at 9% per annum on $205,000.00 on defamation damages against Coors, using the accrual date of January 8, 1997. This amount is compounded annually from May 14, 1997 through the date of this Order. I finally amend the Bill of Costs to reflect an additional $9,354.45 for deposition costs, bringing the total Bill of Costs to $16,306.21.

Accordingly, I ORDER that:

(1) Defendant Mannon's Motion for Amendment of Judgment is GRANTED and the Clerk shall enter an amended judgment in accordance with this Order;

(2) Plaintiff James' Motion for Prejudgment Interest is GRANTED in part and prejudgment interest is awarded according to this Order;

(3) Defendants' Motion for New Trial or, in the Alternative, Motion for Judgment Notwithstanding the Verdict is DENIED;

(4) Plaintiff James' Motion to Review Taxation of Costs is GRANTED in part and the Clerk shall amend the Bill of Costs to increase the costs awarded for depositions by $9,354.45, for a total of $16,306.21; and

(5) Defendant Mannon's Motion to Review Taxation of Costs is DENIED.