**Monica David VICKERY,
Plaintiff–Appellant,**

v.

**Merry Gayle VICKERY, Defendant–
Appellee.**

No. 09CA0586.

Colorado Court of Appeals,
Div. VI.

March 18, 2010.

Gregory R. Giometti & Associates, P.C., Gregory R. Giometti, Mark E. Honart, Denver, Colorado, for Plaintiff–Appellant.

Merry Gayle Vickery, pro se.

Opinion by Judge LOEB.

After a jury trial on her claims of defamation and malicious prosecution, plaintiff, Monica David Vickery, appeals from the trial court's judgment against defendant, Merry Gayle Vickery. Specifically, plaintiff appeals two trial court orders relating to the award of exemplary damages in her favor: (1) the trial court's order denying her motion to increase exemplary damages pursuant to section 13–21–102(3), C.R.S.2009; and (2) the court's order, as set forth in the final judgment, reducing exemplary damages on certain claims under section 13–21–102(1)(a), C.R.S.2009, without first adding statutorily mandated prejudgment interest to the amount of compensatory damages assessed by the jury. We affirm.

## I. Background and Procedural History

Plaintiff's husband, Donald Vickery, died of cancer on December 20, 2005. Defendant, Merry Gayle Vickery, was Donald Vickery's sister. Evelyn Trumble, the mother of both defendant and Donald Vickery, was also a co-defendant at trial, but is now deceased and is no longer a party to this appeal. During the period leading up to Donald Vickery's death,

tensions mounted between plaintiff and defendant over defendant's right to visit Donald Vickery, his medical care, and his property. The claims in this case arose out of defendant's actions following Donald Vickery's death.

Initially, defendant asserted in the probate court that a number of items of personal property associated with Donald Vickery's estate belonged to her or to Trumble. The probate court considered and rejected these challenges.

Then, defendant challenged the validity of a codicil to Donald Vickery's will. The challenged codicil altered several devises in the will, which named plaintiff as the devisee of oil and gas properties in Texas that had previously been bequeathed to defendant and Trumble. Defendant argued in the probate court that Donald Vickery's signature on the codicil was not genuine and was forged. The probate court considered this argument as a contest to the will, and concluded that Donald Vickery had signed the codicil and that the codicil was valid.

Thereafter, according to plaintiff's allegations and evidence at the trial in this case, defendant sent letters to eleven different recipients (the Colorado Attorney General's office, the Denver District Attorney's office, the Denver Police Internal Affairs office, the United States Postal Service postal inspector, the Federal Bureau of Investigation, the Internal Revenue Service, the "Colorado State Revenue Service," American Express, Juno, the Navajo Nation, and the U.S. Department of Labor), claiming that plaintiff, a sergeant with the Denver Police Department, had committed "murder, fraud, theft, and misuse of police authority." Later, defendant also sent letters to American Express, Juno, and the United States Postal Service further accusing plaintiff of fraud and other misdeeds. Defendant also sent letters to two companies that managed the Texas oil and gas interests, stating that (1) plaintiff submitted false evidence at the will contest, and (2) the Internal Revenue Service, the Federal Trade Commission, and the Denver District Attorney's office were conducting criminal investigations into plaintiff's behavior. The letters to the two companies requested that they not make any changes concerning the recipients of the royalties until presented with a court order to do so.

Plaintiff then brought this action in district court, alleging that defendant committed malicious prosecution by claiming ownership of some of the personal property in Donald Vickery's possession and by challenging the codicil to Donald Vickery's will. She also alleged that defendant's letters defamed her.

During the pendency of the case in the trial court, plaintiff discovered that in June 2008, defendant had mailed two anonymous envelopes each to the Colorado governor's office, the Denver mayor's office, the Denver Police Department's Internal Affairs division, and the Fraternal Order of Police. These envelopes enclosed CDs or flash drives containing documents stating that plaintiff was under U.S. Treasury Department investigation, had used her position as a Denver police officer for personal gain, and had committed crimes of moral turpitude and public deception. With leave of the trial court, plaintiff amended her complaint to allege that defendant sent these materials and that they were also defamatory. Plaintiff also amended her complaint to request exemplary damages pursuant to section 13–21–102, C.R.S.2009. Her prayer for relief also requested an award of prejudgment interest.

After a ten-day trial, the court submitted the case to the jury. The jury found that defendant had not committed malicious prosecution in claiming ownership of Donald Vickery's personal property in the probate court. However, the jury concluded that defendant had committed malicious prosecution in challenging the codicil to Donald Vickery's will, and awarded $59,000 in compensatory damages and $10,000 in exemplary damages on that claim. Plaintiff does not challenge the judgments on the malicious prosecution claims on appeal.

The trial court submitted plaintiff's defamation cause of action to the jury as nine separate claims. Prior to doing so, the trial court determined that, as a matter of law, defendant had defamed plaintiff on defamation claim number 5, but it left the determination of damages on that claim to the jury.

The jury decided in favor of plaintiff on all of the remaining defamation claims and awarded damages, as summarized in the following table:

| Defamation Claims | Compensatory Damages | Exemplary Damages |
|---|---|---|
| 1. Letter dated February 2, 2006 to eleven recipients | $25,000 | $25,000 |
| 2. Undated letter to American Express | $ 1 | $ 2,000 |
| 3. Undated letter to postal inspector | $ 1,000 | $ 5,000 |
| 4. Undated letter to Juno Online Services | $ 1 | $ 1,000 |
| 5. Publication of letters to the oil and gas companies on May 14, 2007 | $ 7,500 | $15,000 |
| 6. Certain documents sent in June 2008 | $25,000 | $25,000 |
| 7. Statements on page 48 of documents sent to various parties in June 2008 | $12,500 | $25,000 |
| 8. Statements on page JIMD 00004 of the same documents | $12,500 | $25,000 |
| 9. Statements on page JIMD 00005 of the same documents | $12,500 | $25,000 |

On January 27, 2009, plaintiff filed a motion to increase the punitive damages award. This motion requested the trial court treble the exemplary damages on defamation claims 6–9, pursuant to section 13–21–102(3)(a), C.R.S.2009, or, in the alternative, to enter judgment consistent with the jury's original exemplary damage awards on defamation claims 7–9.

On January 30, 2009, the trial court entered an order denying plaintiff's motion to increase punitive damages. In its order, the court first noted that, pursuant to section 13–21–102(1)(a), it was required to reduce the exemplary damages on some of the defamation claims so that they would not exceed the jury's compensatory damage awards on those claims. However, the court explicitly declined plaintiff's request to increase exemplary damages under section 13–21–102(3)(a), stating, "Other than to amend the judgments as discussed above, I see no reason to alter the jury's verdict in any way, shape or form."

On February 2, 2009, plaintiff filed a motion requesting entry of judgment, including, as pertinent here, the addition of prejudgment interest. Plaintiff argued that the court should first add statutorily mandated prejudgment interest to the jury's assessment of compensatory damages before reducing exemplary damages to the one-to-one ratio mandated in section 13–21–102(1)(a).

After further briefing on plaintiff's motion, the trial court then entered a final judgment on March 5, 2009, awarding compensatory damages on each of the defamation claims in the amounts determined by the jury plus statutory prejudgment interest, as mandated by section 13–21–101(1), C.R.S.2009. However, implicitly denying plaintiff's request in her February 2 motion, the court then entered judgment for an award of exemplary damages on each of the claims, which was capped by the amount of compensatory damages assessed by the jury without the addition of prejudgment interest.

This appeal followed.

## II. Analysis

Plaintiff makes two contentions related to the trial court's calculation of exemplary damages. First, plaintiff contends the trial court abused its discretion by denying her motion to increase the exemplary damage awards on defamation claims 6–9, pursuant to section 13–21–102(3)(a). Second, plaintiff contends the trial court erred by reducing exemplary damages on defamation claims 3, 5, 7, 8, and 9, pursuant to section 13–21–102(1)(a), without first adding prejudgment interest to the amount of compensatory damages assessed by the jury on each of those claims. We reject each of plaintiff's contentions in turn.

Exemplary damages are available in Colorado only pursuant to statute. *See Peterson v. McMahon*, 99 P.3d 594, 596, 597 (Colo.2004); *Kaitz v. District Court*, 650 P.2d 553, 556 (Colo.1982). Pursuant to section 13–21–102(1)(a), in certain actions in which, as here, compensatory damages are assessed by the jury, the jury may, in addition, award reasonable exemplary damages against a defendant when it finds that the plaintiff's injury "is attended by circumstances of fraud, malice, or willful and wanton conduct." When awarded, exemplary damages are intended to punish a wrongdoer and to set an example for others, not to compensate the victim for the harm done to him or her.

*Lira v. Davis,* 832 P.2d 240, 243 (Colo.1992); *Seaward Constr. Co. v. Bradley,* 817 P.2d 971, 974 (Colo.1991).

### A. Motion to Increase Exemplary Damages

Plaintiff first contends the trial court erred by denying her motion to increase the exemplary damages determined by the jury with respect to defamation claims 6–9. Specifically, plaintiff argues that, because the jury concluded she proved beyond a reasonable doubt that defendant willfully and wantonly published defamatory statements after the filing of the lawsuit, the trial court abused its discretion by not increasing exemplary damages under section 13–21–102(3)(a). We are not persuaded.

■ We review a trial court's decision to increase exemplary damages under section 13–21–102(3) for an abuse of discretion. *Martin v. Union Pac. R.R. Co.,* 186 P.3d 61, 71 (Colo.App.2007), *rev'd on other grounds,* 209 P.3d 185 (Colo.2009); *Harvey v. Farmers Ins. Exch.,* 983 P.2d 34, 40 (Colo.App.1998), *aff'd sub nom. Slack v. Farmers Ins. Exch.,* 5 P.3d 280 (Colo.2000). A trial court abuses its discretion if it applies an incorrect legal standard. *Martin,* 186 P.3d at 72. An appellate court reviews the correctness of the trial court's determinations of the applicable legal standards de novo. *See Fogg v. Macaluso,* 892 P.2d 271, 273 (Colo.1995).

Ordinarily, "[t]he amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party." § 13–21–102(1)(a). Nevertheless, section 13–21–102(3) allows the trial court, in its discretion, to increase a jury's exemplary damage award under certain circumstances. As pertinent here, the statute provides:

> (3) Notwithstanding the provisions of subsection (1) of this section, the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that:
>
> (a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant

in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case. . . .

■ This statutory language is permissive, rather than mandatory. *See Harvey,* 983 P.2d at 40. Thus, a trial court need not increase an award of punitive damages even if the plaintiff shows that during the pendency of the case, the defendant continued the behavior or repeated the action which is the subject of the plaintiff's claim. *Id.* ("Acknowledging that the trial court is in a better position to evaluate the conduct of the defendant than we are, we will not on appeal disturb its decision absent an abuse of discretion.").

■ Here, the jury expressly found that defendant acted willfully and wantonly or maliciously on defamation claims 6–9 and that defendant committed this defamation during the pendency of the case. Nonetheless, with respect to these claims, the statute did not require the trial court to increase the exemplary damages beyond the statutory amount that could be properly awarded by the jury.

The record shows that plaintiff amended her complaint with new allegations of defendant's tortious behavior in June 2008, during the pendency of this action. That behavior was then submitted to the jury as four separate defamation claims (claims 6–9), on which the jury awarded plaintiff both compensatory and exemplary damages. Under these circumstances, we conclude the trial court did not abuse its discretion by denying plaintiff's motion to increase the exemplary damage awards against defendant on defamation claims 6–9.

### B. Trial Court's Calculation of Exemplary Damages

Plaintiff next contends that the trial court erred in its calculation of exemplary damages on defamation claims 3, 5, 7, 8, and 9, because it failed to add statutorily mandated prejudgment interest to the jury's assessment of compensatory damages before reducing the exemplary damages awarded by

the jury to the one-to-one ratio required under section 13–21–102(1)(a). We disagree.

▮▮▮▮ Statutory interpretation is a question of law subject to de novo review. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). When interpreting a statute, a court's primary purpose is to effect the intent of the General Assembly. *Id.* We assume that a statute's words and phrases have their plain meanings, unless the result is absurd or unconstitutional. *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996).

▮▮▮▮ When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all its parts. *Welby Gardens v. Adams County Bd. of Equalization*, 71 P.3d 992, 995 (Colo.2003); *People v. Andrews*, 871 P.2d 1199, 1201 (Colo.1994). In doing so, a court should not interpret a statute in ways that defeat the legislature's obvious intent or render part of the statute either meaningless or absurd. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996); *Skyland Metro. Dist. v. Mountain West Enterprise, LLC*, 184 P.3d 106, 117 (Colo.App.2007). Further, statutes should not be read in isolation but together with all other statutes relating to the same subject or having the same general purpose, to the end that the legislature's intent may be ascertained and absurd consequences avoided. *Huddleston v. Bd. of Equalization*, 31 P.3d 155, 159 (Colo.2001); *Skyland*, 184 P.3d at 117.

▮▮▮ If statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *People v. Cooper*, 27 P.3d 348, 354 (Colo. 2001); *Rodriguez*, 914 P.2d at 925. If, however, the statutory language lends itself to alternative constructions and its intended scope is ambiguous or unclear, we then use legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme as interpretive aids. *Suncor Energy (USA), Inc. v. Aspen Petroleum Prods., Inc.*, 178 P.3d 1263, 1266 (Colo. App.2007); *see Rodriguez*, 914 P.2d at 925.

The first of the statutes at issue here, section 13–21–101(1), expressly provides for the recovery of prejudgment interest in certain tort actions as follows:

> In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person ... whether by negligence or by willful intent of such other person ... and whether such injury has resulted fatally or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date said suit is filed; and, on and after July 1, 1979, it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued. *When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on such amount ....*

(Emphasis added.)

Section 13–21–102(1)(a) limits awards of exemplary damages to the level of "actual damages awarded" as follows:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the *actual damages awarded* to the injured party.

(Emphasis added.)

The issue before us then, is whether "actual damages awarded" in section 13–21–102(1)(a) refers to the jury's compensatory damage verdict alone or to the verdict as augmented by the prejudgment interest mandated by section 13–21–101(1). While no published opinion of a Colorado appellate court addresses this exact issue, two opinions from the Colorado Supreme Court provide us with helpful guidance in deciding this issue.

In *Seaward Construction v. Bradley*, the supreme court held that, under section 13–21–101(1), a plaintiff who is awarded exemplary damages in a personal injury action is not entitled to an award of prejudgment interest on such exemplary damages. *Seaward Constr.*, 817 P.2d at 979. In so holding, the supreme court emphasized the different purposes of exemplary and compensatory damages, noting that exemplary damages are awarded to punish a wrongdoer and deter future misconduct, whereas compensatory damages are awarded to make an injured party whole. *Id.* at 975. Thus, while the court also reaffirmed the rule in Colorado that prejudgment interest is an additional item of compensatory damages that is awarded to compensate a plaintiff for the time value of the award eventually obtained against a tortfeasor, *id.* at 976; *see Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo. 1990), the court also noted that prejudgment interest on exemplary damages would serve merely as an additional penalty and is not necessary to make an injured party whole. *Seaward Constr.*, 817 P.2d at 976.

A year later, in *Lira v. Davis*, the supreme court interpreted the language in section 13–21–102(1)(a) in conjunction with Colorado's comparative negligence and pro rata liability statutes. The issues in *Lira* were (1) whether an award of exemplary damages under section 13–21–102(1)(a) should be measured by the amount of compensatory damages assessed by a jury before or after the statutorily mandated *reduction* of such amount for comparative negligence and pro rata liability and (2) as in *Seaward Construction*, whether prejudgment interest could be awarded on an award of exemplary damages.

In *Lira*, a multi-defendant personal injury action, the jury awarded the plaintiff $87,300 for compensatory damages and $87,300 on his claim for exemplary damages. The jury also allocated 50% of the negligence to Lira, one of the defendants. In entering judgment, the trial court applied the comparative negligence and pro rata liability statutes and reduced the compensatory damages award against Lira to $43,650; and, applying section 13–21–102(1)(a), the trial court also reduced the exemplary damages award against

Lira by 50% to $43,650. The trial court then awarded prejudgment interest on both the compensatory and exemplary damages awards. A division of this court reversed the trial court's ruling reducing the exemplary damages award. The division held that, under section 13–21–102(1)(a), the exemplary damages should be no greater than $87,300, the total compensatory damages found by the jury prior to adjustments for comparative and pro rata negligence. The division also affirmed the award of prejudgment interest on the exemplary damages. *See Davis v. Lira*, 817 P.2d 539, 541–42, 546 (Colo.App. 1991).

On certiorari review, the supreme court in *Lira* reversed the division's holdings. The supreme court first concluded that the words "damages assessed" in the first sentence of section 13–21–102(1)(a) refer to the jury's determination of the compensatory damages suffered by the plaintiff, while the words "actual damages awarded" in the last sentence of that section refer to the prorated amount that each tortfeasor owes based on his or her fault for the injury. *Lira*, 832 P.2d at 245. In so concluding, the court reasoned that, in the context of an adjustment for comparative negligence, "actual damages" awarded has a different meaning from "damages … assessed by a jury," and that the General Assembly intentionally chose to use such different language in two different parts of section 13–21–102(1)(a). *Id.* at 245–46. In support of its conclusion, the court noted that section 13–21–102(1)(a) was amended in 1986 as part of "sweeping tort-reform legislation" and that the purpose of the amendment "was to limit excessive punitive damages awards." *Id.* at 246. Accordingly, the court held that section 13–21–102(1)(a) places a maximum on a plaintiff's exemplary damages recovery, which is measured by the amount of compensatory damages after any statutorily mandated reductions for comparative negligence and pro rata liability. *Lira*, 832 P.2d at 246. The supreme court also held, based on *Seaward Construction*, that the award of prejudgment interest on the award of exemplary damages was improper. *Id.*

Here, pursuant to section 13–21–102(1)(a), the trial court reduced the jury's award of exemplary damages on defamation claims 3, 5, and 7–9. The trial court's final judgment demonstrates that it capped the exemplary damage awards at the amount of the jury's verdicts for compensatory damages on those claims, without first adding prejudgment interest under section 13–21–101(1). The court then awarded prejudgment interest on the amount of compensatory damages set forth in the jury's verdicts. For reasons articulated below, we perceive no error in the trial court's ruling with respect to the base it used to reduce exemplary damages under section 13–21–102(1)(a).

We first note that neither party in this appeal cites or discusses *Lira* or *Seaward Construction* in their briefs on appeal, nor does it appear from the record that they did so in the trial court. Rather, relying solely on *Allstate Insurance Co. v. Starke,* 797 P.2d at 19, plaintiff contends simply that, because prejudgment interest is an element of compensatory damages, prejudgment interest must first be added to the amounts awarded by the jury before exemplary damages awarded by a jury are reduced by the trial court pursuant to section 13–21–102(1)(a). Further, we recognize that, although the precise holding in *Lira* was that "actual damages awarded," as used in section 13–21–102(1)(a), refers to the reduced compensatory damage award after applying comparative negligence or pro rata liability, the supreme court's reasoning in that case, at first blush, could suggest that other statutorily mandated adjustments to compensatory damages assessed by a jury, such as additions for prejudgment interest, are also part of the "actual damages awarded." *Lira,* 832 P.2d at 245 (" '[A]ward' means 'a remedy recoverable in accordance with an order for judgment,' not the amount of compensatory damages initially determined by the jury.") (quoting *Tucker v. Marcus,* 142 Wis.2d 425, 418 N.W.2d 818, 823 (1988)). However, for several reasons, we decline to extend the court's holding in *Lira* to the facts here and, thus, we reject plaintiff's contention that the trial court erred in applying section 13–21–102(1)(a).

First, exemplary damages are available in Colorado only pursuant to statute, *see Peterson,* 99 P.3d at 597, and there is no language in section 13–21–102(1)(a) expressly dictating that prejudgment interest should be included in the base on which exemplary damages must be reduced by the trial court under that statute.

Second, and perhaps most important, to accept plaintiff's contention here would effectively negate the supreme court's unequivocal holdings in *Seaward Construction* and *Lira* that prejudgment interest, pursuant to section 13–21–101(1), may not be awarded on exemplary damages. This is because, from a practical standpoint, to apply the statutory reduction in section 13–21–102(1)(a) in the manner suggested by plaintiff, would produce a result that is dollar-for-dollar, identical to awarding prejudgment interest on the exemplary damages as reduced by the trial court here. We are not able to rationalize such a result, which would essentially make the supreme court's interpretation of section 13–21–102(1) in *Seaward Construction* meaningless. *See Skyland,* 184 P.3d at 117.

Third, when we view *Lira* in proper context, we do not perceive *Lira's* interpretation of the words "actual damages awarded" in section 13–21–102(1)(a) as dictating the result advocated by plaintiff here. To the contrary, the supreme court's statutory interpretation in *Lira* was articulated in the context of a case involving multiple defendants and was driven by the interplay between two important aspects of tort reform legislation—limitations on awards of exemplary damages and reductions of compensatory damages based on comparative fault and pro rata liability. Thus, in discussing the legislative purpose of the 1986 amendment to section 13–21–102(1)(a), the court stated:

> If the exemplary damages are limited to the reduced compensatory damages amount, then the purpose of the [1986 amendment to section 13–21–102(1)(a)] ... would be promoted because a defendant would be responsible for paying a maximum of twice the amount of damages

he is determined to owe after reduction for the apportionment of fault.

*Lira,* 832 P.2d at 246.

Here, by contrast, comparative negligence and pro rata liability are simply inapplicable. *Cf. id.* (in cases involving comparative and pro rata liability statutes, one defendant's "liability for [exemplary] damages should be no greater than the amount of actual damages her [or she] owes"). Accordingly, in our view, it would be inappropriate to extend *Lira's* holding on the issue relating to the exemplary damages cap in section 13 –21–102(1)(a) to the facts in this case, where the practical effect of this result would be to negate the supreme court's other holding in *Lira,* reversing the trial court's award in that case of prejudgment interest on the exemplary damages award. *Id.* Indeed, when viewed in proper context, the actual result dictated by the supreme court's holdings in *Lira* is completely consistent with the manner in which the trial court here entered judgment for compensatory damages, exemplary damages, and prejudgment interest.

We are aware that, in *James v. Coors Brewing Co.,* 73 F.Supp.2d 1250 (D.Colo. 1999)—also not cited in any of the parties' briefs on appeal here—the United States District Court for the District of Colorado was presented with the exact issue before us in this case. The federal court first acknowledged that no Colorado cases address specifically whether prejudgment interest should be considered "actual damages" for purposes of section 13–21–102(1)(a). *James,* 73 F.Supp.2d at 1254. However, relying on the supreme court's reasoning in *Lira* and *Seaward Construction,* the court held that prejudgment interest under section 13–21–101(1) should be added to compensatory damages assessed by a jury *before* reducing an exemplary damages award under section 13–21–102(1)(a). *Id.* at 1255.

With all due respect to the federal district court, for the reasons discussed above, we do not find the court's reasoning in *James* persuasive, and we decline to apply that reasoning to resolve plaintiff's contention here. The court in *James* simply did not take into account the limited context of the supreme court's holding in *Lira,* nor did it consider

that the practical effect of its holding would be to negate the rule in Colorado that prejudgment interest cannot be awarded on exemplary damages. *See Lira,* 832 P.2d at 246; *Seaward Constr.,* 817 P.2d at 972.

Accordingly, we conclude the trial court did not err in its reduction of exemplary damages on defamation claims 3, 5, 7, 8 and 9, pursuant to section 13–21–102(1)(a).

The judgment is affirmed.

Judge CARPARELLI and Judge BERNARD concur.